STATE OF CONNECTICUT *v.* LEROY WHITTINGHAM
(6722)

BORDEN, O'CONNELL and STOUGHTON, Js.

Argued January 4—decision released May 23, 1989

*Suzanne Zitser,* assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* deputy assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, *Robert Katz,* assistant state's attorney, and *Jay Huntington,* former deputy assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of possession of marihuana with intent to sell, in violation of General Statutes § 21a-277 (b).[1] The defendant

---

[1] General Statutes § 21a-277 (b) provides: "(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marihuana, except as authorized in this chapter, may, for the first offense, be fined

claims that the trial court erred (1) in denying the defendant's motion to sever and allowing the joint trial of two legally unrelated drug cases, (2) in failing to conclude as a matter of law that there was insufficient evidence to support the conviction of possession of marihuana with intent to sell, and (3) in denying him due process by sentencing him not only for the charge of which he was convicted but also for the charges on which he was acquitted. We find no error.

The jury could reasonably have found the following facts. In October, 1986, the Norwalk police obtained a search warrant for the defendant's person and his van. The police located the van parked in front of a small, two unit apartment house. Its tires were flat and the van appeared to have been parked there for a long time. After the police approached the van, they noticed the defendant, whom they recognized, watching them from a window in the second floor apartment. The police asked the defendant to come down to the van, and the defendant complied. When he arrived at the van, there was an odor of marihuana on his person. The defendant was held at gun point while being searched for weapons, and was detained while the search of the van was executed.

The search of the van yielded a clear plastic bag containing ten packages of marihuana, specifically, seven small "nickel bags" and three larger bags containing equal amounts of marihuana, rolled up like cigars. The marihuana found in the van totalled 1.6 ounces in weight. The police arrested the defendant.

Two of the officers then entered the apartment building in order to inform the defendant's girlfriend that

not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

the defendant was being taken into custody. One of the officers approached the door of the second floor apartment while the other waited at the bottom of the stairs. The officer knocked and someone in the apartment opened the door "a crack." The officer asked to speak with the defendant's girlfriend, and an occupant in the apartment disavowed any knowledge of her whereabouts. The officer noticed the odor of marihuana wafting out of the apartment. The officers left, posting one officer at the first floor entrance to the premises.

Two hours later, the police returned with a search warrant for the apartment. In searching the apartment, the police discovered drug paraphernalia, a sawed-off twelve-gauge shotgun and ammunition, a scale, and a locked briefcase containing an adding machine, $700 in small denominations, a department store receipt bearing the defendant's name and seventeen ounces of marihuana packaged for sale.

The defendant was charged with possession of marihuana and possession of marihuana with intent to sell in connection with the marihuana found in the van; in connection with the evidence found in the apartment, he was charged with possession of four or more ounces of marihuana, possession of drug paraphernalia, possession of a sawed-off shotgun, and possession of marihuana with intent to sell. While the defendant was being booked, he was advised that a briefcase had been seized in the apartment. Without being told of the contents of the briefcase, the defendant asked for "his $700." The two informations were joined for trial. The jury convicted the defendant of possession of marihuana with intent to sell in connection with the van, and acquitted him of all the charges involving the apartment. This appeal followed.

I

The defendant first claims that the court erred in denying his motion to sever the two cases, arguing

(1) that there was no connection between him and the evidence seized in the apartment that would make the evidence in the apartment case admissible against him in the van case, (2) that the state's failure to present the evidence in the two cases in an orderly and separate fashion prejudiced his right to a fair trial, and (3) that the court failed to cure this prejudice through its instructions to the jury. Our examination of the first of these arguments is dispositive of this claim.

"Pursuant to [Practice Book] § 829 and [General Statutes] § 54-57 a trial court may order a joint trial of charges involving offenses of the same character. Section 829, however, should be read in the light of Practice Book § 828, which permits severance '[i]f it appears that a defendant is prejudiced by a joinder of offenses . . . .' See *State* v. *King,* 187 Conn. 292, 296, 445 A.2d 901 (1982) . . . . Similarly, in construing § 54-57, we have stated that the question of severance lies within the discretion of the trial court, which should not be interfered with unless it has been manifestly abused. . . . 'The discretion of a court to order separate trials should be exercised only when a joint trial will be substantially prejudicial to the rights of the defendant, and this means something more than that a joint trial will be less advantageous to the defendant.' *State* v. *Silver,* 139 Conn. 234, 240, 93 A.2d 154 (1952). '[A]n accused bears a heavy burden to show that the denial of severance resulted in substantial injustice . . . .' *State* v. *King,* supra, 302 . . . ." (Citations omitted.) *State* v. *Pollitt,* 205 Conn. 61, 67–68, 530 A.2d 155 (1987).

The basis for the defendant's challenge to the joinder of charges is that the offenses alleged in the informations were legally and factually separate. The defendant argues that the factual similarities between the two cases, though insufficient to make the evidence in each case substantively admissible at the trial of the other,

were significant enough to impair the defendant's right to the jury's fair and independent consideration of the evidence in each case. See *State* v. *Boscarino,* 204 Conn. 714, 723, 529 A.2d 1260 (1987). We agree, however, with the interpretation of the trial court and the state, namely, that the offenses charged in the two informations arose from what was essentially a single transaction. Moreover, we conclude that at least part of the evidence found in the apartment was substantively admissible against the defendant for the charges connected to the van case.

When the defendant left the apartment house to join the police on the street outside his van, the police detected the odor of marihuana on his person. Because the police had seen the defendant at the window of the second floor apartment moments before his odorous appearance on the street, they reasonably suspected that a felony was being committed in the apartment.[2] They investigated the situation by knocking on the door of the second floor apartment and conversing with one of the occupants thereof. Thus, contemporaneously with their search of the van, the police uncovered the first link in the chain of evidence leading to the search of the apartment, namely, that the defendant's odor of marihuana suggested that illegal activity was taking place in the apartment. Although the process of procuring a search warrant delayed the search of the

[2] There was conflicting testimony on the issue of the police's purpose in entering the apartment building the first time. Officer Brian Liddy of the Norwalk police department testified that he entered the building to advise the defendant's girlfriend that the defendant had been arrested, and that he would be at police headquarters. The defendant testified that before he was taken from the scene in custody, Liddy asked the defendant if he could search the apartment. The defendant said he could not give permission because he did not live there. This testimony, although facially in conflict, nonetheless supports the trial court's conclusion that the van case and the apartment case formed two parts of a single transaction.

apartment for several hours, the crimes were connected in time and place. Compare *State* v. *Boscarino,* supra, 717–20.

Certain of the crimes in the two informations were also legally related. Evidence of a defendant's other criminal offenses is admissible in the trial of another case when " ' "the collateral crime tends directly to prove the commission of the principal crime, or the existence of any element of the principal crime . . . ." ' *State* v. *Esposito,* 192 Conn. 166, 169, 471 A.2d 949 (1984) . . . . Consistent with this rule, the state may introduce evidence of other crimes to establish a defendant's intent, identity, malice, motive, or system of criminal activity. See *State* v. *Williams,* [190 Conn. 104, 107, 159 A.2d 510 (1983)]." (Citations omitted.) *State* v. *Boscarino,* supra, 722.

Officer Brian Liddy of the Norwalk police department testified that the defendant, while he was being booked, was advised that a briefcase had been seized in the apartment. The defendant then spontaneously asked if he could have his $700. That amount of cash was found in the locked briefcase, along with seventeen ounces of marihuana, packaged for sale. In light of testimony by the state's expert that drug dealers routinely keep most of their inventory separate from the smaller amount that they possess for sale on the street, the evidence of the seventeen ounce quantity was relevant to the issue of whether the defendant intended to sell the 1.6 ounces of marihuana found in the van. See *State* v. *Pollitt,* supra, 69; see also *State* v. *Boscarino,* supra, 722; *State* v. *Avila,* 166 Conn. 569, 572–73, 353 A.2d 776 (1974) (element of intent to sell narcotic in prosecution for possession of narcotic with intent to sell may be proved by circumstantial evidence); *State* v. *Iovieno,* 14 Conn. App. 710, 715–16, 543 A.2d 766, cert. denied, 209 Conn. 805, 548 A.2d 440 (1988).

Thus, the evidence of the seventeen ounces of marihuana in the briefcase was admissible in the van case. This fact, as well as our agreement with the trial court that the two cases were factually and legally related, lead us to conclude that the defendant was not prejudiced by the joint trial. This belief is further buttressed by "the very fact that the jury acquitted the defendant" of the charges relating to the apartment case. *State* v. *Iovieno,* supra, 722. "By acquitting the defendant of this one count, the jury demonstrated that it was not simply cumulating evidence in order to decide the case before them, but rather demonstrated that each count was analyzed separately. *State* v. *Lo Sacco,* 11 Conn. App. 24, 27, 525 A.2d 977, cert. denied, 204 Conn. 812, 528 A.2d 1158 (1988)." *State* v. *Iovieno,* supra, 722; *State* v. *Saraceno,* 15 Conn. App. 222, 234, 545 A.2d 1116 (1988).

II

The defendant next claims that the trial court erred in failing to set aside the conviction on the second count, possession of marihuana with intent to sell, because the evidence was insufficient to establish that charge beyond a reasonable doubt. "The two-fold test for determining the sufficiency of the evidence to justify a conviction is well established. We first view all of the evidence in the light most favorable to the verdict. We then determine whether a jury could have reasonably concluded, from that evidence and all the reasonable inferences which it yields, that the defendant was guilty beyond a reasonable doubt. *State* v. *DiStefano,* 7 Conn. App. 726, 731, 510 A.2d 995 (1986)." *State* v. *Parent,* 8 Conn. App. 469, 472–73, 513 A.2d 725 (1986).

The defendant claims that the state did not prove intent, a necessary element of the crime, beyond a reasonable doubt. We disagree. Proof of a defendant's intent generally takes the form of circumstantial evi-

dence, from which the jury is free to draw such inferences that are logical and reasonable. *State* v. *Napoleon,* 12 Conn. App. 274, 284, 530 A.2d 634 (1986), cert. denied, 205 Conn. 809, 532 A.2d 78 (1987).

From the evidence presented at trial, the jury could logically and reasonably find that the defendant intended to sell the marihuana in the van. Although the amount of marihuana in the van may be regarded as somewhat small, 1.6 ounces, that fact alone would not preclude a finding that the defendant intended to sell it. See *State* v. *Uribe,* 14 Conn. App. 388, 393, 540 A.2d 1081 (1988). The state presented expert testimony that the marihuana was packaged in seven very small "nickel bags" and three larger baggies, in a manner consistent with its being sold. The state's expert further testified that 1.6 ounces would be a large purchase for personal consumption, and that it would be more usual for one purchasing such an amount for personal use to purchase one larger bag, rather than ten small ones. The state also presented evidence that the defendant maintained three addresses, and expert testimony that such behavior was characteristic of drug dealers. "[T]here was sufficient cumulative evidence of the defendant's intent to sell marihuana to support the jury's verdict. It is ' "[t]he cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." *State* v. *Perez,* [183 Conn. 225, 227, 439 A.2d 305 (1981)] . . . .' *State* v. *Sinclair,* 197 Conn. 574, 576–77, 500 A.2d 539 (1985)." *State* v. *Uribe,* supra, 394.

## III

The defendant finally claims that the trial court erred by sentencing him, not only for the charge on which he was convicted but also for the charges on which he was acquitted. The court's sentence, the defendant

argues, constitutes a deprivation of due process of law in violation of the fifth and fourteenth amendments to the federal constitution.

The factual basis for this claim is a single word uttered by the trial court at the sentencing hearing. After hearing argument from the state, the defense counsel and the defendant himself, the court announced its sentence in a monologue which included the following passage: "I think what [the defendant] is being sentenced for, is possession of marihuana with intent to sell, which is a felony calling for a penalty of up to seven years. In this case, *sixteen* ounces." (Emphasis added.) The defendant was convicted of possessing *1.6* ounces in the van with intent to sell, and was acquitted of possessing the 17.05 ounces discovered in the briefcase. The defendant argues that the judge mistakenly sentenced him for possessing sixteen ounces, and points to the severity of the sentence—four years incarceration—as evidence of the court's confusion. There is no merit to this claim.

A sentence imposed within statutory limits is generally not subject to review. *State* v. *McNellis,* 15 Conn. App. 416, 445, 546 A.2d 292 (1988). In determining the statutorily limited sentence to be imposed, the trial court exercises wide discretion as to the sources and types of information it will consider. Id.; *State* v. *Huey,* 1 Conn. App. 724, 734, 476 A.2d 613 (1984), aff'd, 199 Conn. 121, 505 A.2d 1242 (1986). Prior to making a sentencing decision, a judge may appropriately conduct a broad inquiry, largely unlimited as to the kind of information he or she may consider. *United States* v. *Tucker,* 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972). That information may appropriately include information that would have been inadmissible for the purpose of determining guilt; *United States* v. *Baylin,* 696 F.2d 1030, 1039 (3d Cir. 1972); *State* v. *Huey,* 199 Conn. 121, 126, 505 A.2d

1242 (1986); evidence of crimes for which the defendant was indicted but neither tried nor convicted; *United States* v. *Bowdach,* 561 F.2d 1160, 1175 (5th Cir. 1977); *State* v. *Huey,* supra; and evidence bearing on charges for which the defendant was acquitted. *State* v. *Mancinone,* 15 Conn. App. 251, 288, 545 A.2d 1131 (1988).

As a matter of due process, however, information may be considered as a basis for a sentence only if it has some minimum indicium of reliability; id.; and a defendant would be denied due process of law if he is prejudiced by the prosecutor's submission of misinformation regarding his prior criminal record, or by the court's careless misreading of the record. *Townsend* v. *Burke,* 334 U.S. 736, 740–41, 68 S. Ct. 1252, 92 L. Ed. 1690 (1948); *State* v. *McNellis,* supra, 447–48. We will therefore examine the record to determine whether the trial court did in fact misread the record, and if so, whether that misstep prejudiced the defendant.

The marihuana found in the van weighed 1.6 ounces, the marihuana in the apartment weighed 17.05 ounces, and the aggregate of the two weighed 18.6 ounces. Thus, there is no basis in the record for the court to consider an amount of marihuana weighing sixteen ounces. We agree with the state's explanation, namely, that it is most likely that the court misread its notes, omitting the decimal in "1.6." Our examination of the record, however, reveals that this misreading did not materially prejudice the defendant.

The court only once mentioned the *amount* of marihuana the defendant was convicted of possessing with the intent to sell. Moreover, in context, the reference to sixteen ounces appears to be an afterthought; the court's principal concern was not the amount the defendant possessed but the fact that he intended to sell the drugs in his possession. The court stated: "There is a war against drugs, and, as a deterrent, it

is very important that the word go out . . . that the drug pushers are to be dealt with very severely in the courts . ‥ . . When anyone decides voluntarily to traffic in drugs he is going to suffer. Hopefully that will be a deterrent to others who are contemplating selling marihuana." The sentence imposed, four years imcarceration, was well within the statutory maximum, and the defendant was not deprived of due process of law.

There is no error.

In this opinion the other judges concurred.