STATE OF CONNECTICUT *v.* WILLIAM CHARLES SPEARS
(7117)

BORDEN, SPALLONE and FOTI, Js.

Argued October 17—decision released December 26, 1989

*Pamela J. Bristol* and *Michael J. Lefebvre,* certified legal interns, with whom were *Richard Emanuel,*

*Timothy H. Everett* and, on the brief, *Michael R. Sheldon,* and *Todd D. Fernow,* for the appellant (defendant).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *John Connelly,* state's attorney, and *Bradford Ward,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of the lesser included offense[1] of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3),[2] as an accessory pursuant to General Statutes § 53a-8.[3] The defendant was sentenced to twenty years imprisonment. He claims that the trial court erred (1) in unconstitutionally diluting the state's burden of proof and the presumption of innocence in its instructions to the jury, (2) in relieving the state of its burden of proof and invading the jury's factfinding function by referring in its jury instructions to the state's principal witness as an accomplice, and (3) in violating the defendant's rights to a trial by jury and due process of law by repudiating the jury's verdict and imposing a sentence based on its own factual determination regarding charges of which he was acquitted. We find no error.

The state's principal witness was Valerie Carson, the daughter of the victim. Carson had pleaded guilty to

---

[1] The defendant was charged with the crime of murder, both as a principal and an accessory.

[2] General Statutes § 53a-55 provides in pertinent part: "(a) A person is guilty of manslaughter in the first degree when: . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[3] General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

manslaughter in the first degree in connection with her mother's death, and testified against the defendant.

The state presented the following evidence. The defendant and Carson had known each other since grammar school, and were intimate friends from December, 1984, until April, 1987. In February, 1986, the defendant introduced Carson to crack cocaine. By February, 1987, she and the defendant had expensive crack habits for which she bore the primary financial burden, spending as much as $1000 per weekend. Carson's salary was inadequate to cover these expenses, and in order to finance their drug habits, she began pawning her personal possessions, borrowing money and writing bad checks. She also made a fraudulent attempt to obtain a home improvement loan secured by the residence that she owned jointly with her mother, but she was unsuccessful. Carson's failure to obtain the loan, compounded by the defendant's anger toward her for failing to obtain the money, made her despondent and resulted in a suicide attempt.

Carson testified that the defendant repeatedly told her that he could "take care" of her mother "in a heartbeat," which he told her meant death by strangulation. If her mother were dead, Carson anticipated that she would receive $10,000 as beneficiary of an insurance policy, and would obtain full ownership of the house. She also testified that the defendant brought rubber work gloves from his workplace in preparation for the strangulation.

On the evening of the homicide, Carson took her mother's checkbook and forged a check to obtain cash to buy crack for herself and the defendant. Later that evening, she met Larry Leach, a mutual acquaintance of her and the defendant. Leach testified that he and Carson smoked numerous vials of crack, that Carson drove him to the defendant's apartment, that Carson

then drove him and the defendant to the victim's house, and that Carson entered the house alone. Further, Leach testified that while he and the defendant were in the street, Carson reappeared at the door wearing gloves and holding a knife, and called for the defendant to enter the house alone. Leach testified that he left the scene after the defendant entered the home.

Carson testified that she and the defendant had agreed that she would distract her mother with a knife while the defendant would render her unconscious by striking her and that he would then strangle her. She also testified that in the actual execution of the plan, the defendant grabbed the victim from behind, tried to hit her on the head with a candleholder, choked her, commanded Carson to stab her, and that the defendant aided Carson in the stabbings by placing his hand over hers to assist in driving the knife into the victim. The defendant also repeatedly stabbed the victim with a second knife.

Carson also testified that after the homicide, she and the defendant ransacked the house to simulate a burglary, and that the defendant attempted to start a fire by pouring alcohol on the victim's face and lighting it. There was independent forensic evidence that the victim's face was stained with rubbing alcohol.

The defendant and Carson then left the scene and returned to his apartment, where they removed their outer clothing and discarded it in a sewer along with the victim's purse and checkbook. Their planned alibi was that they had spent the evening together at the defendant's apartment. The next morning, Carson returned home, purported to "discover" the body and ran to a neighbor to notify the police. Carson testified further that while she was incarcerated for the homicide of the victim, she received letters from the defendant wherein he professed his love for her, suggested

that she not inform the police of his involvement and indicated that his fate was in her hands.

The defendant testified that he did not join in any plan to kill the victim. He also testified that when Carson called him into the victim's house, he followed her into the kitchen, where he saw the victim on the floor with blood on her face and head. He testified that he then ran outside and vomited.

The jury acquitted the defendant of the crime of murder as charged, both as a principal and as an accessory, and of the lesser included offense of manslaughter in the first degree as a principal. The jury found him guilty of the lesser included offense of manslaughter in the first degree as an accessory. This appeal followed.

I

The defendant first claims that the court erred in providing an instruction to the jury that unconstitutionally diluted both the presumption of innocence and the state's burden of proving guilt beyond a reasonable doubt. The instruction at issue is as follows: "It is the sworn duty of the courts and jurors to safeguard the rights of persons charged with crime by respecting *the presumption of innocence which the law imputes to every person so charged and by making the state meet its burden of proving guilt beyond a reasonable doubt, but you must keep in mind that those rules of law are made to protect the innocent and not the guilty.* If and when the presumption of innocence has been overcome by evidence proving beyond a reasonable doubt that the accused is guilty of the crime charged, then it is your sworn duty to enforce the law and to render a verdict of guilty." (Emphasis added.)

The defendant challenges the propriety of the language emphasized above. He argues that by instructing the jury that "those rules of law are made to protect

the innocent and not the guilty," the court improperly instructed the jury that neither the presumption of innocence nor the reasonable doubt standard protects the guilty and innocent alike. We disagree.

Because the defendant failed to raise this claim at trial, we undertake a limited review of the record to determine whether the record supports his claim. *State* v. *Spigarolo,* 210 Conn. 359, 388–89, 556 A.2d 112, cert. denied,     U.S.     , 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989), citing *State* v. *Bailey,* 209 Conn. 322, 329–30 n.4, 551 A.2d 1026 (1988) (in determining whether the record supports a constitutional claim for the purpose of *Evans* review, it must be shown that the claim is truly of constitutional proportions and not simply characterized as such by the defendant). We conclude that the defendant's claim falls short of *Evans* review; *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973); for want of support in the record. See, e.g., *State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

Our Supreme Court has consistently rejected challenges to jury instructions with language very similar to that challenged in this case. See *State* v. *Brown,* 199 Conn. 14, 28, 505 A.2d 690 (1986); *State* v. *Palmer,* 196 Conn. 157, 168–69, 491 A.2d 1075 (1985); *State* v. *Just,* 185 Conn. 339, 352–53, 441 A.2d 98 (1981); *State* v. *Jonas,* 169 Conn. 566, 578, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976); *State* v. *Guthridge,* 164 Conn. 145, 154, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186 (1973); *State* v. *Cari,* 163 Conn. 174, 180–81, 303 A.2d 7 (1972). Those cases hold that an instruction that the law is made to protect society and the innocent and not the guilty, does not dilute the presumption of innocence when it is "used in conjunction with a clear instruction both as to the presumption of innocence and as to the duty of the state to

prove beyond a reasonable doubt the defendant's guilt . . . ." *State* v. *Palmer,* supra, 168.

We perceive no difference between those cases and this case, where the reasonable doubt standard is also linked to the challenged instruction. As long as the challenged instruction is used together with clear instructions on both the presumption of innocence and the reasonable doubt standard, "such language is both proper and correct." Id. Where both the presumption of innocence and the reasonable doubt standard are linked with the challenged instruction, the use of clear instructions on these "logically similar" concepts; see *State* v. *Coleman,* 14 Conn. App. 657, 669, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988); eliminates any risk that the jury will believe it is free to disregard those concepts in reaching its verdict.

In this case, immediately following the challenged instruction, the court stated, "[i]f and when the presumption of innocence has been overcome by evidence proving beyond a reasonable doubt that the accused is guilty of the crime charged, then it is your sworn duty to enforce the law and to render a verdict of guilty." This language clearly put the challenged instruction into its proper context with the presumption of innocence and the state's burden to prove guilt beyond a reasonable doubt. Indeed, the language in the present case is almost identical to that approved in *State* v. *Palmer,* supra, where the trial court stated, " '[i]f this presumption of innocence has been overcome or removed by evidence clearly demonstrating beyond a reasonable doubt that an accused person is guilty of the crime charged, then it is the sworn duty of the jury to enforce the law which is made for the protection of life, society and property and to render such a verdict as the evidence warrants.' "

## II

The defendant's next claim is that the court relieved the state of its burden of proof and invaded the jury's factfinding role by instructing the jury that Carson "is what the law calls an accomplice." He argues that this presented a conclusion of law to the jury, and that the jurors could reasonably have heard this statement to mean that they were bound to find that Carson and the defendant acted in concert, as the state claimed. This argument is without merit.

Because this claim was not raised at trial, the defendant seeks review of it under the *Evans* bypass. *State v. Bailey,* supra. It is clear, however, that he has simply put a constitutional label on a nonconstitutional claim. Id.

It is axiomatic that jury charges are to be viewed in their entire context, and are not to be critically dissected in a search for error. *State v. Anderson,* 212 Conn. 31, 37, 561 A.2d 897 (1989). They must also be evaluated from the viewpoint of the likelihood of the jury's understanding of them. Id. The defendant's argument violates these principles.

The challenged instruction was given in the context of the court's charge on credibility of witnesses in general, and on the credibility of Carson in particular. It was not given as part of the instruction regarding the elements of the crimes charged or the rules of accomplice liability. Furthermore, the particular language challenged was part of the following instruction: "Now, one of the witnesses in this case—and I refer to the witness, Valerie Carson—*by her own testimony,* participated in the criminal conduct charged by the state in this case. She is what the law calls an accomplice." (Emphasis added.) The court then instructed the jury that it should, in weighing her testimony, consider that

she "is a self-confessed criminal," and should weigh the "amount of moral wrong and the witness participation in the crime . . . ." It also charged the jury to keep in mind her interest in the outcome of the case because she may be hoping for favorable treatment in her own case, and that it should "look with particular care at the testimony of an accomplice and scrutinize it very carefully before you accept it." The court pointed out, also, that testimony of one who is by her own testimony implicated in the crime may be reliable because it is against her own interest. Finally, the court reminded the jury that it was to decide "what credibility you will give to a witness who has admitted her own involvement in criminal wrongdoing," and that such a credibility decision must be "based on all the evidence presented to you."

Carson was the principal witness tying the defendant to the crime charged. The court's legal characterization of her as an accomplice was clearly meant to refer to, and could only have been reasonably understood by the jury to mean, her role in the crime based upon her own testimony. Thus, the entire accomplice instruction was designed to guide the jury as to how to evaluate her credibility in implicating the defendant. Given the entire context of the challenged language, therefore, it is fanciful to think that the jury could have believed that the court was instructing it to find that the defendant was, as a matter of law, a participant in the crimes charged.

### III

The defendant's final claim is that the court violated his rights to a trial by jury and due process of law by repudiating the jury verdict and sentencing him for the crime of murder, of which he was acquitted.[4] We disagree.

---

[4] The sentencing comments challenged by the defendant are as follows: "*I don't know how* the jury specifically arrived at its results in this trial,

In reviewing a sentence that is within the statutory limits, we start with the basic premise that "[a]s long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." *State* v. *Huey,* 199 Conn. 121, 127, 505 A.2d 1242 (1986). We are not persuaded that this case warrants interference with the trial court's discretion.

The sentencing remarks of the trial court that the defendant chooses to accentuate do not constitute the imposition of a sentence for the crime of murder. Although the court considered evidence bearing on charges of which the defendant was acquitted, that consideration is a legitimate sentencing factor. *State* v. *Huey,* supra, 126; *State* v. *Whittingham,* 18 Conn. App. 406, 415–16, 558 A.2d 1009 (1989); *State* v. *Mancinone,* 15 Conn. App. 251, 287–88, 545 A.2d 1131 (1988). Moreover, that evidence was but one factor on which the court based its decision. The court also considered the presentence investigation report, which disclosed that there was no indication of any remorse on the part

*but I do know* that certainly on the basis of the evidence *that I heard,* there is no question that this defendant, Mr. Spears, was the *chief architect of this evil design.*

"Your lust for money to support the drug habit which you had and which Miss Carson had resulted in the death of a fifty-eight year old, law-abiding, respected, hardworking woman, Mrs. Carson . . . . And in addition to her death, before that, you were responsible, I have no doubt, for the addiction that her daughter, Valerie Carson, experienced, severe drug addiction.

"This young lady, who as I recall it, was well educated, had a good work history, intelligent. Now she's in prison. *Her mother's dead* and she's in prison. *And the responsibility, so far as this Court is concerned, is yours.* . . .

"*I think the jury* in arriving at its results, *treated you with an abundance of leniency. I don't intend to do so.*

"The sentence of this Court, Mr. Spears, is that you be committed to the custody of the Correction Commissioner for a period of twenty years. Total effective sentence, twenty years to serve." (Emphasis added by the defendant.)

of the defendant, as well as the defendant's extensive prior criminal history and drug involvement. The court also emphasized the defendant's "lust for money to support the drug habit" that he and Carson shared, and the defendant's responsibility for Carson's severe drug addiction, which ultimately resulted in the victim's death, the ruin of Carson's previously productive life, and her imprisonment. All of this information, as a matter of due process, had the requisite minimal indicia of reliability; *State* v. *Whittingham,* supra, 416; and, therefore, was proper for the trial court to take into account in the sentencing calculus.

There is no error.

In this opinion the other judges concurred.