STATE OF CONNECTICUT *v.* KENNETH GELORMINO, SR.
(8337)

SPALLONE, LAVERY and LANDAU, Js.

564

Argued February 5—decision released May 7, 1991

*John J. Davenport,* with whom, on the brief, was *Timothy C. Moynahan,* for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *Frank S. Maco,* state's attorney, and *John Dropick,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crimes of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), and assault in the second degree in violation of General Statutes § 53a-60 (a) (1). On appeal, the defendant claims that the trial court improperly denied his motion for judgment of acquittal in violation of due process under the state and federal constitutions, and relied on false information when imposing sentence. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The victim, Gordon Vaill, was an acquaintance of the defendant, Kenneth Gelormino, Sr., and his sons, Kenneth Gelormino, Jr., and William Gelormino. On the evening of August 12, 1988, Vaill and his friend, Dominic "Doc" Consolini, broke into the defendant's family business, Trim Unlimited, located in Torrington and took a red toolbox which they hid in a nearby house, intending to sell it at a later time.

The next morning, neighbors told Kenneth Jr. that they had seen two men loading a red box into a black pickup truck outside Trim Unlimited. Kenneth Jr. discovered a broken window at the rear of the shop, but did not report the break-in or the theft of the toolbox to the police.

That afternoon, the defendant, suspecting the victim's involvement, called the victim's girl friend, Audrey McDonald, and asked her where the victim was staying. Upon her indication that the victim was staying at Consolini's house, the defendant and his sons picked up McDonald at her home and drove her to Pulaski Street, where she identified Consolini's house. They parked nearby and discussed who would have the best chance of gaining entry into Consolini's house. They agreed that William would go to the house and ask for the victim.

They left McDonald at a restaurant and drove back to the Consolini house. William entered the house through a side door and told the victim, who was sitting on a sofa in the living room, that he was there for a social visit.

At that point, the defendant and Kenneth Jr. entered the house through the side door and William left. The defendant and Kenneth Jr. asked the victim for the tool box and when the victim denied knowing anything about it, the defendant punched the seated victim in the head, rendering him stunned and dazed. The defendant continued beating the victim with his fists and with a belt with metal rings, hitting his head, shoulders and back. Present during the altercation was Danielle Gordon who was told by the defendant that the victim was being beaten because he had taken something from them. Gordon left the house during the beating and waited around the corner. The defendant continued to beat the victim while Kenneth Jr. searched the house. Thereafter, Kenneth Jr. joined the defendant in the assault, and began striking the victim with a wooden two-by-four. During the assault, the victim remained seated and attempted to shield his head with his hands.

After beating the victim, the defendant and Kenneth Jr. asked him who owned the television set that was in the room. Upon being told by the victim that the set belonged to Consolini, Kenneth Jr. stated, "It is mine now." He then picked up the television set and took it with him as he left the house with the defendant.

The victim was faint, dizzy and bleeding from multiple lacerations. The police, responding to a call, arrived at the house where they found the victim seated on the porch. After obtaining a search warrant, the police entered Consolini's house where they found a blood stained two-by-four, a blood stained cane shaft and its detached handle, and red stains on the back and arm

of a love seat, on a cushion, on the stove top, on the kitchen floor and on a tabletop.

The victim was transported to the emergency room of Charlotte Hungerford Hospital where he was treated for multiple lacerations and abrasions to his head, face, arm and leg and for abdominal pain and shock. Upon a determination that the victim was bleeding internally, emergency surgery was performed for a ruptured spleen which was caused by blunt and severe trauma to the abdomen or back. The victim was hospitalized for ten days after surgery, including five days in intensive care. On August 27, he was readmitted for a second surgical procedure to relieve symptoms caused by adhesions which resulted from the splenic injury and the initial surgery.

The defendant and his two sons were arrested as a result of the incident. The defendant was charged with assault in the first degree; General Statutes § 53a-59 (a) (1); burglary in the first degree; General Statutes § 53a-101 (a) (1) and (2); and larceny in the fifth degree; General Statutes § 53a-125a.

The defendant and his sons were tried jointly to a jury of six.[1] Prior to submitting the case to the jury, the court granted the defendant's motion for judgment of acquittal on the charge of assault in the first degree because the evidence failed to support the allegation that the defendant caused serious physical injury with a dangerous instrument, and indicated that it would charge instead on assault in the second degree. The court subsequently deleted subsection (1) (armed with a dangerous instrument) from the burglary charge, and instructed the jury only on subsection (2) (intentionally inflicts or attempts to inflict bodily injury). The court also granted the defendant's motion for acquittal on the larceny charge.

[1] At the end of the state's case, the trial court granted William Gelormino's motion for judgment of acquittal on all counts. Kenneth Gelormino, Jr., is appealing separately from his convictions in this case. *State* v. *Gelormino*, 24 Conn. App. 556, 590 A.2d 476 (1991).

The jury found the defendant guilty of assault in the second degree and burglary in the first degree. Thereafter, the defendant filed motions for judgment of acquittal on the assault and burglary counts. These motions were denied.

The trial court sentenced the defendant to five years of imprisonment on the assault charge and twenty years imprisonment on the burglary charge, execution suspended after ten years, to be served consecutively, for a total effective sentence of twenty years imprisonment suspended after fifteen years, with five years probation. This appeal followed.

I

The defendant's first claim, that the trial court improperly denied his motion for a judgment of acquittal on the charge of burglary in the first degree, is raised in three parts. We will examine each in turn.

The defendant argues first that he could not, as a matter of law, be convicted of burglary as charged in the information and bill of particulars after the trial court ruled that there was insufficient evidence to sustain a conviction of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). This claim arises in the following context. The defendant was charged with burglary in the first degree in violation of General Statutes § 53a-101.[2] The state filed a bill of particulars regarding the burglary charge that provided in pertinent part that the defendant committed the crime of burglary in the first degree by "remaining unlawfully in the building in said premises with the intent to commit therein the crime of assault in the first

[2] General Statutes § 53a-101 (a) provides: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument, or (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

degree Connecticut General Statutes § 53a-59 (a) (1) . . . ."[3] General Statutes § 53a-59 (a) (1) provides: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ." At trial, the court ruled that there was insufficient evidence that the use of a deadly weapon or dangerous instrument had caused the victim's serious physical injury and therefore granted the defendant's motion for a judgment of acquittal on the assault in the first degree charge. Accordingly, the trial court did not instruct the jury as to the elements of assault in the first degree, charging instead on assault in the second degree.

As to the burglary charge, the court instructed the jury that a conviction required, among other elements, the intent to commit assault. The defendant asserts that the inconsistency between the intent to commit assault charge and the intent to commit assault in the first degree, as described in the bill of particulars, violated his due process rights.

The purpose of the bill of particulars is to inform the defendant of the charges against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise. *State* v. *Roque,* 190 Conn. 143, 156, 460 A.2d 26 (1983). It is well settled that a bill of particulars limits the state " 'to proving that the

---

[3] The bill of particulars regarding burglary provides as follows: "The State of Connecticut alleges that the defendant, Kenneth M. Gelormino, Sr., with intent that conduct constituting a crime be committed, did commit the crime of Burglary in the First Degree at 146 Pulaski Street, Torrington, CT, on or about August 13, 1988, in that the defendant, remaining unlawfully in the building at said premises with intent to commit therein the crime of Assault in the First Degree Connecticut General Statutes § 53a-59 (a) (1) and was armed with a dangerous instrument, to wit: a belt with metal rings and fists, and in the course of committing the offense he intentionally and knowingly inflicted bodily injury on another, one Gordon A. Vaill, in violation of Connecticut General Statutes § 53a-101 (a) (1) and (2)."

defendant has committed the offense in substantially the manner described.' " *State* v. *Steve,* 208 Conn. 38, 44, 544 A.2d 1179 (1988). It is the defendant's burden on appeal to demonstrate that "he was in fact prejudiced in his defense on the merits" as a result of a material variance between the allegations in a bill of particulars and proof at trial, and that "substantial injustice was done to him because of the language of the state's pleadings." *State* v. *Roque,* supra. We find that the court's charge to the jury was in substantial conformity with the facts alleged in the state's bill of particulars and that the defendant has not established that any variance prejudiced the presentation or preparation of his defense.

The defendant was charged in the bill of particulars with assault in the first degree. He was, thereby, put on notice that he may be convicted of that charge or of any lesser included offenses of the crime charged. *State* v. *Rodriguez,* 180 Conn. 382, 402, 429 A.2d 919 (1980). The defendant was fully informed of the charges against him and the events underlying those charges. The difference between burglary with the intent to commit assault in the first degree and burglary with the intent to commit assault has not been shown to have had any prejudicial impact on the defendant's preparation or presentation of his defense on the merits. The lack of prejudice is fatal to his claim. *State* v. *Roque,* supra; *State* v. *Markham,* 12 Conn. App. 306, 313, 530 A.2d 660 (1987).

The defendant's argument that the trial court's decision granting his motion for a judgment of acquittal on the charge of assault in the first degree precluded, as a matter of law, a conviction of burglary as charged is also without merit. The trial court found the evidence insufficient to show that the defendant had caused serious physical injury with the belt used to beat the victim. It did not, however, indicate that the intent to

cause such injury was absent. Indeed, the decision by the trial court to submit the burglary charge to the jury indicates rather the opposite. A conviction for burglary does not require proof that the underlying crime actually occurred. *State* v. *Little,* 194 Conn. 665, 675, 485 A.2d 913 (1984). It is burglary whether the defendant successfully carries out his intent or not. Id.

In the second part of his argument, the defendant asserts that the evidence was insufficient to support the jury's conclusion that he had unlawfully remained on the premises. Our review of such a claim is limited. A finding of fact by the jury must stand if it is reasonably supported by the evidence or the reasonable inferences drawn therefrom. *State* v. *Allen,* 216 Conn. 367, 380, 579 A.2d 1066 (1990). The evidence presented is viewed in the light most favorable to sustaining the verdict.

General Statutes § 53a-100 (b) provides: "A person 'enters or remains unlawfully' in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the actor is not otherwise licensed or privileged to do so." The defendant asserts that (1) because Consolini generally left the doors to his house unlocked, the premises were "generally open to the public acquainted with Doc Consolini," (2) he was privileged to enter to retrieve stolen goods, and (3) he had a license to enter created by the victim's consent to his entry as evidenced by the fact that the defendant was "never asked to leave" and when the defendant and the codefendants "arrived, they came in and started talking in an apparent 'social visit.' " These claims have no merit.

No evidence was presented that Consolini's house was open to the public. Although one may be privileged to enter another's property to retrieve his goods, the act must be reasonable, and burglary is an unreasonable act even if the occupant of that house had stolen items from the defendant. *State* v. *Messier,* 16 Conn.

App. 455, 462, 549 A.2d 270, cert. denied, 209 Conn. 829, 552 A.2d 1216 (1988). This is so because burglary requires the intent to commit a crime within the building, and not merely the intent to recover one's property. Finally, even if the evidence could be construed to show the victim's implicit consent to the defendant's entry, the vicious assault perpetrated on the victim was clearly not within the scope of that consent. *State* v. *Allen,* supra.

The third and final part of the defendant's first claim is that the evidence was insufficient to support a finding by the jury that the defendant had the intent to cause serious physical injury or that the defendant had in fact caused serious physical injury to the victim, as required to support a conviction of assault in the second degree. As explained above, our review of these factual conclusions is limited on appeal. The Appellate Court does not " 'retry the case or evaluate the credibility of the witnesses.' " *State* v. *Hart,* 198 Conn. 424, 427, 503 A.2d 588 (1986). Our review of the transcripts reveals that the jury had before it ample evidence from which it could reasonably conclude that the defendant possessed the requisite intent and had, in fact, caused the victim's serious physical injuries.

## II

The defendant's second claim is that the trial court violated his state and federal constitutional rights to due process when the court allegedly relied on false or unreliable information in determining the defendant's sentence. Specifically, he takes issue in two areas with regard to the court's sentencing remarks that indicated that the court believed (1) that the defendant had influenced his son to offer testimony exonerating the defendant, which testimony was not believed by the jury, and (2) that the toolbox introduced into evidence by the defense was not the toolbox that allegedly had been stolen but one purchased for use as evidence at trial.

The facts pertaining to this claim are as follows. A defense witness who lived next door to Trim Unlimited testified that on the evening of August 12, 1988, he saw two men taking a red toolbox to a truck parked in front of his driveway. The box was being pushed and pulled along the ground to the truck. Another defense witness testified that on August 13, 1988, he bought a toolbox from Dominic Consolini for $200. The toolbox was a red Snap-on model containing tools and measured three feet by three feet. Neither witness was asked at trial to identify a particular toolbox as the one they saw in 1988. Kenneth Jr. also testified for the defense. During his testimony, a toolbox measuring twenty-six inches by fourteen and one-half inches by seventeen inches and its contents of tools were entered as an exhibit for identification. He expressly identified the exhibit as the toolbox taken from him and claimed that he used the tools in his trade. The state specifically questioned the authenticity of the proffered exhibit as the toolbox that was stolen. The court observed the toolbox. In addition, Kenneth Jr. completely exonerated the defendant of any involvement whatsoever in the assault on the victim and upon cross-examination by the defendant he maintained that position.

Included in the trial court's sentencing remarks was the following language: "You chose, and it was your right not to testify and not to explain what happened. Instead, you had your son, who the court believes was under your dominion and control, take the stand and concoct a story which the jury found not credible and in a decision with which that court concurs. When one examines the exhibits, defendant's photograph of the toolbox, it stretches credibility to the limit to have any belief that the toolbox had been used by anyone, but had just been purchased for the sole reason to have some evidence presented to the court. [There] does not appear to be a scratch on the outside of the toolbox, tools appear not to ever have been used. As far as the

toolbox is concerned, I believe the jury rejected it, as was their right. I believe their decision was correct." The defendant contends that the foregoing remarks indicate that the trial court relied on "false" information and engaged in speculation and conjecture in sentencing him.

Due process considerations at sentencing are less expansive than those afforded a defendant at trial. *State* v. *Huey,* 199 Conn. 121, 127, 505 A.2d 1242 (1986). The sentencing court has extremely broad discretion, and may consider information that was not admissible or otherwise not presented at trial, as long as that information has some minimal indicium of reliability. *Williams* v. *New York,* 337 U.S. 241, 246–47, 69 S. Ct. 1079, 93 L. Ed. 337 (1949); *State* v. *Collette,* 199 Conn. 308, 320, 507 A.2d 99 (1986); *State* v. *Whittingham,* 18 Conn. App. 406, 416, 558 A.2d 1009 (1989). "As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." *State* v. *Huey,* supra. A review of the evidence adduced at trial, coupled with the trial court's own observations fails to demonstrate that the court relied on information that was materially false or unreliable. The authenticity of the toolbox and his son's denial that the defendant participated in the beatings were at issue and challenged by the prosecution. In the matter of the defendant's culpability, it is apparent from the verdict that the jury rejected his son's testimony that the defendant did not engage in beating the victim. The court's own observations, along with the evidence and the verdict, fail to support a conclusion that the trial court's remarks were based on false and unreliable information. We cannot say that the trial court acted improperly when sentencing the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.