STATE OF CONNECTICUT *v.* ROBERT COOK
(AC 20561)

Lavery, C. J., and Foti and Schaller, Js.

Argued January 15—officially released May 28, 2002

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Roger S. Dobris*, senior assistant state's attorney, with whom, on the brief, was *Michael Dearington*, state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Robert Cook, appeals from the judgments of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2)[1] and attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (2).[2] The defendant claims that the trial court improperly (1) admitted evidence of uncharged conduct by the defendant and (2) consolidated for trial the count of attempt to commit robbery in the first degree with two counts of robbery in the first degree. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On September 22, 1998, the Dairy Mart convenience store located at 224 Quinnipiac Avenue in North Haven was robbed. At approximately 9 p.m., a man entered the store and pointed a shotgun at the two employees who were behind the counter. The man ordered the employees to place the money from the register into a bag. The man took the bag containing approximately $500 and exited the store. Both of the

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[2] The defendant was acquitted of one count of robbery in the first degree.

clerks described the man as a black male wearing a multicolored scarf tied across his face as a mask from above his nose to below his chin.

On November 21, 1998, Krauszer's food store located at 59 Middletown Avenue in North Haven was robbed. A black male entered the store, pointed a shotgun at the clerk and demanded money. The clerk handed the man a bag containing approximately $541, and he left the store. The clerk described the man as wearing a "hankie" over his face and a sports cap on his head.

On December 11, 1998, the Tolland Xtra Mart located on the Hartford Turnpike in Tolland was robbed. At approximately 8:45 p.m., a black male entered the store, pointed a shotgun at the clerk and demanded money. The clerk gave the man a bag containing approximately $300, and he exited the store. The clerk described the man as wearing a purple bandana over his face.

On that same day, at approximately 9:45 p.m., Sergeant William Birney of the Wallingford police department observed a car parked suspiciously in a vacant lot next to a Texaco Mini-Mart located in Wallingford. Earlier that day, Birney had received information concerning robberies of convenience stores that described the perpetrator as a black male wearing a multicolored bandana and armed with a shotgun. He observed a man, Harry Rivers, leaning against the operator's door of the vehicle, looking toward the Texaco station. Birney called in the license plate registration number of the vehicle and was informed that the plate had been reported stolen. As Birney approached the vehicle, Rivers was in the driver's seat and he observed another man, the defendant, walk out from behind the Texaco station. When he arrived at the vehicle, the defendant was standing in front of it. After backup arrived, Birney opened the glove compartment of the vehicle to obtain the registration documents. Birney found a shower cap

containing $407 in the glove compartment and two large bags containing $144 in a rear child seat. Birney then observed a multicolored bandana protruding from the defendant's pocket, and, as the officer reached for it, the defendant attempted to flee but was quickly apprehended. A shotgun was found leaning against an air conditioning unit of the Texaco station approximately thirty feet from the stolen vehicle. The shotgun was later identified by the convenience store clerks as the weapon used in the robberies. The defendant was placed under arrest for attempt to commit robbery of the Texaco Mini-Mart.

The defendant was charged in three separate informations with robbery in the first degree for the robbery of the Dairy Mart in North Haven, robbery in the first degree for the robbery of Krauszer's convenience store in North Haven and attempt to commit robbery in the first degree based on his arrest at the Texaco Mini-Mart in Wallingford. Prior to the commencement of jury selection, upon motion of the state, the trial court consolidated the three informations for trial. Following a jury trial, the defendant was found guilty of attempt to commit robbery in the first degree and of one count of robbery in the first degree. The defendant was sentenced to a total effective term of fifteen years in the custody of the commissioner of correction. This appeal followed.

I

The defendant first claims that the court improperly allowed the jury to consider evidence of the Tolland robbery for which he had not been charged as it pertained to the defendant's intent to rob the Texaco Mini-Mart in Wallingford. We do not agree.

"Although evidence of other crimes or uncharged conduct is not admissible to show bad character or a disposition to commit a crime, such evidence is admissi-

ble to show such issues as common scheme, intent, malice, identity, motive or opportunity." *State* v. *Greene*, 209 Conn. 458, 464–65, 551 A.2d 1231 (1988). "The rationale of this rule is to guard against its use merely to show an evil disposition of an accused, and especially the predisposition to commit the crime with which he is now charged. . . To be admitted under one of these exceptions, the evidence must satisfy a two-pronged test: First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect." (Citations omitted; internal quotation marks omitted.) *State* v. *Sierra*, 213 Conn. 422, 428, 568 A.2d 448 (1990). "It is [b]ecause of the difficulties inherent in this balancing process that the trial court will be reversed only when there is a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Greene*, supra, 465.

During trial, the state sought to introduce evidence of the uncharged Tolland robbery through the testimony of Nina Miller, the clerk working at the convenience store on the night of the robbery. The state claimed that the evidence was relevant to the issues of the identification of the perpetrator in the two North Haven robberies and the defendant's intent to commit a robbery of the Texaco Mini-Mart in Wallingford. [3] The court held a hearing on the state's offer of proof outside of the presence of the jury and ruled that the testimony was admissible. The court stated: "[W]ith respect to the Wallingford robbery, it was on the same day as the Tolland robbery. As I recall the evidence from Sergeant Birney, there was a bandana in [the defendant's] jacket. There was a shotgun found leaning against the building behind the Texaco Mini-Mart. I think the fact—if a jury

---

[3] The defendant does not challenge the jury's use of the uncharged Tolland robbery on the issue of identification in the two North Haven robberies.

should conclude that a convenience store robbery took place, as described in the evidence I heard this morning, that that is—that is extremely relevant to the issue of whether or not Mr. Rivers and [the defendant] had the intent to commit a robbery of that Texaco Mini-Mart. . . .

"That being the case, I believe this evidence on the first prong of the test is relevant to the issue of identity. The second is a balancing test concerning probative value versus prejudice. . . . I wanted to wait until I heard all the evidence in this case along with the offer of proof so that I could make that balancing test not in a vacuum, but in the context of all that's been presented. I believe that I'm going to resolve that, as I have indicated, in favor of allowing this evidence to come in." The trial court gave a limiting instruction to the jury following Miller's testimony and also in its final charge. The court instructed the jurors that they could consider the evidence of the Tolland robbery for the limited purposes of identification in the two North Haven robberies and the defendant's intent to commit a robbery of the Wallingford Texaco Mini-Mart.

The court properly determined that the evidence of the uncharged conduct was relevant to the issue of the defendant's intent to commit a robbery in the attempted robbery and that the probative value of the evidence outweighed any prejudicial effect. Furthermore, the court was aware of the potentially prejudicial effect of the evidence and instructed the jury twice that the evidence could be considered only for a limited purpose. See *State* v. *Figueroa,* 235 Conn. 145, 166–68, 665 A.2d 63 (1995). We conclude, therefore, that the court's decision to admit the evidence of the uncharged conduct was not an abuse of discretion.

## II

The defendant next claims that the court improperly joined for trial the attempted robbery in Wallingford with the two North Haven robberies. We disagree.

Prior to trial, the state moved to consolidate the three informations into a single trial. Following a hearing, the court granted the state's motion. The defendant took no exception to the consolidation of the two informations charging him with the North Haven robberies, but he claimed that it was improper to consolidate those informations with the information charging him with attempt to commit robbery.

"We recognize that an improper joinder may expose a defendant to potential prejudice for three reasons. First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him . . . . Second, the jury may have used the evidence of one case to convict the defendant in another case even though that evidence would have been inadmissible at a separate trial. . . . [Third] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all. . . . Nevertheless, because joinder foster[s] economy and expedition of judicial administration . . . we consistently have recognized a clear presumption in favor of joinder and against severance . . . and, therefore, absent an abuse of discretion, we will not second guess the considered judgment of the trial court as to joinder or severance of two or more charges.

"The court's discretion regarding joinder, however, is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, we have identified several factors that a trial court should consider in deciding

whether a severance may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *Lewis*, 60 Conn. App. 219, 226–27, 759 A.2d 518, cert. denied, 255 Conn. 906, 762 A.2d 911 (2000).

Even though the charges against the defendant involve similar factual scenarios, the court's instruction to the jury was sufficient to cure any prejudice that might have occurred. The court thoroughly instructed the jury twice that the evidence of the uncharged conduct should not be used to infer guilt but only for the limited purpose of the issue of identification. Although the crimes involved an element of potential violence, they were not brutal or shocking in nature and the trial was neither long nor complex. In addition, the jury acquitted the defendant of one count of robbery in the first degree, which demonstrated that it was able to analyze each count separately. *State* v. *Whittingham*, 18 Conn. App. 406, 413, 558 A.2d 1009 (1989). We conclude, therefore, that the joinder of the three charges did not prejudice the defendant and, accordingly, the court did not abuse its discretion.

The judgments are affirmed.

In this opinion the other judges concurred.