STATE OF CONNECTICUT *v.* BERNARD THOMAS
(13285)

HEALEY, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued November 10, 1988—decision released February 28, 1989

*Raymond T. DeMeo* and *Frances Erlichson,* with whom, on the brief, was *Michelle DeGarmeaulx,* for the appellant (defendant).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, was *Kevin McMahon,* assistant state's attorney, for the appellee (state).

HULL, J. The defendant, Bernard Thomas, was convicted after a jury trial of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B), and carrying a dangerous weapon in violation of General Statutes § 53-206. He received a total effective sentence of thirty-three years imprisonment, suspended after twenty years.[1] On appeal, the defendant claims that the trial court erred: (1) in denying his motions for judgment of acquittal with respect to the charge of burglary in the first degree; (2) in its instructions to the jury with respect to the charge of burglary in the first degree; (3) in failing to order a timely correction of the state's information; and (4) in denying his motion for a new trial. We conclude that the trial court erred in denying the defendant's motions for judgment of acquittal on the charge of first degree burglary and therefore remand the case to the trial court with direction to render a judgment of acquittal on that charge. We find no error with respect to the defendant's remaining claims.

---

[1] The defendant was sentenced on the charges as follows: first degree kidnapping, eighteen years, suspended after five years; first degree robbery, fifteen years, to run consecutively with the sentence for kidnapping; first degree burglary, seven years, to run concurrently with the sentence for robbery; carrying a dangerous weapon, two years, to run concurrently with the sentence for robbery.

The jury could reasonably have found the following facts. At about 5:30 a.m. on April 19, 1986, the A-1 convenience store located on Maple Avenue in Hartford opened for business. The store was staffed by one clerk, Christopher Dugan. Prior to opening the store, Dugan performed several tasks that he routinely was required to do, including placing a "standard amount" of money—approximately $70—in the cash register located on the store counter. This money was taken by Dugan from a pouch that was situated next to the cash register. At approximately 5:45 a.m., the defendant walked into the store. After picking up a sandwich and a container of juice and putting them on the store counter, the defendant told Dugan that he had left his wallet in his car and that he would be "right back" to pay for the items. He then exited the store. When the defendant reentered the store, Dugan was in a corner of the store preparing coffee. The defendant approached Dugan from behind, placed an arm around his neck, and touched a pointed instrument to his back. He forced Dugan into a bathroom in the rear of the store and ordered him not to move. The door to the bathroom was unlocked. The defendant then went to the front of the store to the area behind the cash register. Meanwhile, Dugan was able to switch on the store's surveillance camera and silent alarm, and then locked himself in the bathroom.

Hartford police officer Michael Gerasimovich was less than one block away from the store when he received the report of the silent alarm. Gerasimovich responded without delay and, upon his arrival at the scene, he observed the defendant standing in the open doorway of the store, gesturing him to come inside. The defendant told Gerasimovich that he was the victim of a robbery and that the perpetrator was in the back room of the store. Gerasimovich did not recognize the defendant as a store employee, and when the defendant

attempted to force his way past Gerasimovich, Gerasimovich restrained him, and a struggle ensued. At this point, another Hartford police officer, Sebastian Basile, arrived at the scene and immediately went to the aid of Gerasimovich. During the officers' struggle with the defendant, Basile grabbed a knife and a straight razor that he saw underneath the defendant's jacket and threw them to the ground. The officers also removed from the defendant's possession the money pouch that had been on the counter next to the cash register when the defendant first entered the store. The pouch contained $130.

The store's surveillance camera recorded much of the incident. The video tape showed a man, identified as the defendant, behind the store counter attempting unsuccessfully to open the cash register. The defendant's scuffle with the police officers was also recorded on the video tape. The video tape was entered into evidence at the trial and viewed several times by the jury and the witnesses. The defendant did not testify on his own behalf at trial nor did he present any witnesses or evidence.

I

The defendant moved for judgment of acquittal on the charge of burglary in the first degree on three separate occasions during the course of the trial: once at the close of the state's evidence, once after the defense rested, and a final time following the jury's return of a verdict of guilty. See Practice Book §§ 883, 899.[2] The defendant appeals challenging the trial court's denial of these motions.

_____

[2] Practice Book § 883 provides: "Motions for a directed verdict of acquittal and for dismissal when used during the course of a trial are abolished. Motions for a judgment of acquittal shall be used in their place. After the close of the prosecution's case in chief or at the close of all the evidence, upon motion of the defendant or upon his own motion, the judicial authority shall order the entry of a judgment of acquittal as to any principal offense

First degree burglary in Connecticut is defined in General Statutes § 53a-101 (a) as follows: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument, or (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone." For purposes of § 53a-101 (a), the words "enters or remains unlawfully" are further defined in General Statutes § 53a-100 (b): "A person 'enters or remains unlawfully' in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the actor is not otherwise licensed or privileged to do so."

In his first motion for judgment of acquittal on the burglary charge, made at the close of the state's evidence, the defendant contended that the evidence introduced by the state at trial was insufficient to establish that his actions fell within the parameters of burglary in the first degree as that crime is defined by §§ 53a-101 (a) and 53a-100. Specifically, the defendant argued that he could not have "enter[ed] or remain[ed] unlawfully" on the premises, as required by § 53a-101 (a), because that element of the crime, as fully defined by § 53a-100 (b), can occur only where the premises are "not open

charged and as to any lesser included offense for which the evidence would not reasonably permit a finding of guilty. Such judgment of acquittal shall not apply to any lesser included offense for which the evidence would reasonably permit a finding of guilty."

Practice Book § 899 provides: "If the jury return a verdict of guilty, the judicial authority, upon motion of the defendant or upon his own motion, shall order the entry of a judgment of acquittal as to any offense specified in the verdict, or any lesser included offense, for which the evidence does not reasonably permit a finding of guilty beyond a reasonable doubt. If the judicial authority directs an acquittal for the offense specified in the verdict, but not for a lesser included offense, he may either:

"(1) Modify the verdict accordingly; or

"(2) Grant the defendant a new trial as to the lesser included offense."

to the public." Since the convenience store was, admittedly, open for business to the public at the time the defendant committed the alleged burglary therein, the defendant claimed that the state had failed to meet its burden of proving beyond a reasonable doubt an essential element of the crime charged, i.e., an unlawful entry or remaining by the defendant, and that a judgment of acquittal should therefore be entered on the burglary charge.

In response to the defendant's argument, the trial court noted that a diagram of the A-1 convenience store was introduced into evidence at trial and that this diagram included a depiction of the store counter and the area behind the counter. The court stated that an inference could be drawn that the area behind the counter, where the defendant concededly went in an attempt to open the cash register, was for employees only and thus not open to the public.[3] The trial court then denied the defendant's motion for judgment of acquittal on the burglary charge. Presumably, the trial court's denial of the defendant's motion was predicated on its belief that there was sufficient evidence introduced at trial that would reasonably permit the jury to find that the

---

[3] The exchange between defense counsel and the court concerning this issue was as follows:

"Ms. Storey: The store here wasn't closed, had not been closed, and I think the State's evidence cannot sustain a burglary in the first degree charge. I think also there is a—

"The Court: There was testimony in this case from Mr. Dugan. That [store] counter was drawn at the Court's request, it delineates an area on your diagram to the left of the entranceway, or corridor that's for employees only.

"Ms. Storey: I don't believe he said it was for employees only. I believe he drew the counter on there, and he did testify there were no signs, I believe that said employees only. There were no chains across. It doesn't have a separate locked door.

"The Court: There is an inference to be drawn that the area where the register, the gas counter and the other machinery are located on your diagram, the left front are not available to the public. The testimony is clear in reference that it is not for public use."

area behind the store counter was not open to the public and, hence, that an unlawful entry or remaining under the burglary statute had indeed been committed by the defendant.[4]

On appeal, the defendant has shifted the focus of his argument, claiming that, since an unlawful entry or remaining under § 53a-101 (a) must occur "in a building," the trial court's ruling that there was sufficient evidence to establish that an unlawful entry or remaining occurred in the area behind the store counter can be upheld only if that area may be considered a "building" within the meaning of the statute. The defendant maintains, however, that the area encompassed by the store counter cannot, under any reasonable interpretation, be regarded as a "building" as that term is used in the burglary statute. Thus, it is the defendant's position that the state's evidence was insufficient to establish this essential element of the crime, and that the trial court therefore erred in denying his motions for judgment of acquittal. We agree.[5]

For purposes of first degree burglary under § 53a-101 (a), the term "building" is defined separately in § 53a-100 (a) (1) as follows: "Where a building consists of separate units, such as, but not limited to separate apartments, offices or rented rooms, any unit not occupied by the actor is, in addition to being a part of such building, a separate building . . . . " We conclude that under no stretch of the statutory language can the counter area of the A-1 convenience store be

---

[4] The second and third motions for judgment of acquittal made by the defendant on the burglary charge were denied by the court without oral argument from counsel.

[5] The state offers no rebuttal to the defendant's attack upon the court's ruling and, in fact, concedes that the counter area is not a "building" for purposes of the burglary statute. The state does, however, offer alternate grounds upon which the court's ruling may be affirmed; see Practice Book § 4013 (a) (1); which are addressed later in this opinion.

deemed a "building" as that term is defined in § 53a-100 (a) (1). The store counter, and the area it encompasses, clearly does not fall within the "separate unit" category of offices, rooms or like structures that may themselves be considered "separate building[s]" under § 53a-100 (a) (1), nor have we discovered a case that even remotely suggests that the counter area of a commercial establishment may be considered a "building" in the context of a burglary statute. Thus, in the absence of a legally identifiable "separate unit" within the A-1 convenience store, the entire store itself must be deemed the relevant structure for purposes of determining whether the defendant unlawfully entered or remained in a "building" in violation of § 53a-101 (a). Since it is undisputed that the store was open for business at the time of the alleged burglary, and since the defendant entered no "separate unit" within the store, it follows that his entry and remaining in the area behind the counter was not "unlawful" under §§ 53a-101 (a) and 53a-100. Therefore, the state failed to prove an essential element of the crime charged, and it was error for the court to deny the defendant's motions for judgment of acquittal.

The state, however, proffers an alternate ground for sustaining the trial court's ruling that merits brief discussion. See Practice Book § 4013 (a) (1). Conceding that the only "building" involved in this case with respect to the burglary charge is the A-1 convenience store itself, the state contends, nevertheless, that the defendant "unlawfully remained" in the store in violation of § 53a-101 (a). Since § 53a-100 (b), the relevant definitional section, provides that an unlawful remaining can occur only when the premises are "not open to the public," the fact that the store was open for business to the public at the time of the alleged burglary would appear to render the state's position untenable. The state, however, advances a novel interpretation

of the phrase "not open to the public," contained in § 53a-100 (b), in an attempt to establish that the defendant unlawfully remained on the store premises. The state submits the proposition that a store, like A-1, is "open" to the public only for purposes that are in accord with the store's commercial function, but that a store is "not open" for any purposes inconsistent with that function. Thus, the state argues, when the defendant, once inside the store, manifested an intent to carry out a criminal purpose by forcing the clerk into the bathroom at knifepoint, his actions were incompatible with the store's commercial function and, consequently, the store was no longer "open to the public." The state maintains that under this proposed interpretation there was sufficient evidence introduced at trial to permit the jury to find that the defendant had "unlawfully remained" in a building.

The state's argument is an innovative one. We refuse, however, to adopt this unique construction of the phrase "not open to the public" for purposes of defining an "unlawful remaining." Rather, we find that the comments of the Connecticut commission to revise the criminal statutes more accurately reflects the type and scope of activity that was intended by the legislature to constitute an unlawful remaining under §§ 53a-101 (a) and 53a-100 (b). The commission commented as follows: "ENTER OR REMAIN UNLAWFULLY. The purpose of this definition is to make clear that only the kind of entry or remaining which is likely to terrorize occupants is prohibited by the crime of burglary. Thus, when the building is, at the time, open to the public, or the actor is otherwise licensed or priviliged to be there, the element of terror is missing and the requirement is not met. This does not mean, however, that an initial lawful entry followed by an unlawful remaining would be excused. *For example, A enters an office building during business hours—a lawful entry*

*since the building is open to the public—and remains,
perhaps hidden, after the building is closed, with intent
to steal. A is guilty of burglary."* (Emphasis added.)
Commission to Revise the Criminal Statutes, Penal
Code Comments, Connecticut General Statutes (1969)
pp. 52–53. This example cited by the commission, which
represents the paradigm of an unlawful remaining
under our burglary statutes, clearly does not encom-
pass the conduct of the defendant in this case. Further,
we decline to expand the definition of an unlawful
remaining, as urged by the state, to include the
manifestation of an unlawful intent, such as that
exhibited by the defendant, on store premises, while
such premises are open for business to the public.

Accordingly, we conclude that the court erred in fail-
ing to grant the defendant's motions for judgment of
acquittal on the charge of burglary in the first degree
and, therefore, we remand the matter to the trial court
with direction to set aside the judgment of conviction
on that charge and to render a judgment of acquittal
thereon.[6]

## II

The defendant next claims that the trial court erred
in failing to order a timely correction of the state's
amended information and that he was denied a fair trial
as a result. The following facts are relevant to this
claim. The four count amended information alleged,
inter alia, that the defendant committed the crime of
"carrying dangerous *weapons*" (emphasis added) in vio-
lation of General Statutes § 53-206.[7] The final bill of

---

[6] Our ruling on this point renders moot the defendant's second claim of
error regarding the court's instructions to the jury on the burglary charge
and, thus, we decline to address it.

[7] "[General Statutes] Sec. 53-206. CARRYING AND SALE OF DANGEROUS
WEAPONS. (a) Any person who carries upon his person any slung shot, air
rifle, BB. gun, blackjack, sand bag, metal or brass knuckles, or any dirk
knife, or a switch knife, or any knife having an automatic spring release

particulars, however, alleged that the defendant carried only one weapon, a knife, during the incident. The jury was allowed to examine these charging documents during its deliberations.

During the course of the trial, the state offered two weapons into evidence: a knife with a six-inch blade, and a straight razor, both of which were found on the defendant's person during his struggle with the police officers. The defendant objected to the admission into evidence of the razor as irrelevant since, under the final

device by which a blade is released from the handle, having a blade of over one and one-half inches in length, or stiletto, or any knife the edged portion of the blade of which is four inches or over in length . . . or any other dangerous or deadly weapon or instrument, unless such person has been granted a written permit issued and signed by the first selectman of a town, the mayor or chief of police of a city or the warden of a borough, authorizing such person to carry such weapon or instrument within such town, city or borough, shall be fined not more than five hundred dollars or imprisoned not more than three years or both. No permit shall be issued to any applicant who has ever been convicted of a felony. The issuing authority may request the applicant's fingerprints and full information concerning his criminal record and make an investigation concerning the suitability of the applicant to carry any such weapon. Refusal of fingerprinting by the applicant shall be sufficient cause to refuse issuance of a permit. Whenever any person is found guilty of a violation of this subsection, any weapon or other implement within the provisions hereof, found upon the body of such person, shall be forfeited to the municipality wherein such person was apprehended, notwithstanding any failure of the judgment of conviction to expressly impose such forfeiture. Any person who has been granted a permit to carry any martial arts weapon pursuant to this section may carry such weapon anywhere within the state. The provisions of this subsection shall not apply to any officer charged with the preservation of the public peace nor to any person who is found with any such weapon or implement concealed upon his person while lawfully removing his household goods or effects from one place to another, or from one residence to another, nor to any person while actually and peaceably engaged in carrying any such weapon or implement from his place of abode or business to a place or person where or by whom such weapon or implement is to be repaired, or while actually and peaceably returning to his place of abode or business with such weapon or implement after the same has been repaired."

bill of particulars, he was charged with carrying only the knife. The state, however, said that it was offering the razor for the limited purpose of demonstrating the defendant's intent to commit the other crimes with which he was charged, i.e., robbery, kidnapping and burglary. After argument by counsel out of the presence of the jury, the court permitted the introduction of the straight razor into evidence to show intent.

The defendant claims on appeal that the variance between the charging documents on the weapons charge, coupled with the introduction into evidence of both the knife and the straight razor, confused the jury by leaving them "with the erroneous impression that the defendant was being charged with the possession of more than one weapon." The defendant appears to argue that this variance, taken together with the admission into evidence of the straight razor, misled the jury into believing it could convict the defendant on the weapons charge on the basis of his possession of the straight razor, when in fact the state was limited, under the bill of particulars, to proving that charge by demonstrating that the defendant was carrying a knife only.[8] The defendant maintains that the trial court's failure to prevent this purported jury confusion by ordering a timely correction of the variance constituted an abuse of the court's discretion and denied him his right to a fair trial. We are unpersuaded.

---

[8] " 'The bill of particulars does not become part of the [information]. See 4 Wharton, Criminal Law and Procedure, § 1870. See generally 41 Am. Jur. 2d, Indictments and Informations, §§ 163–65.' *State* v. *Glass,* 107 R.I. 86, 92, 265 A.2d 324 (1970). It does, however, limit the state to proving that the defendant committed an offense 'in substantially the manner described.' *State* v. *Ruiz,* 171 Conn. 264, 270, 368 A.2d 222 (1976). . . ." (Citations omitted; brackets in original.) *State* v. *Roque,* 190 Conn. 143, 154–55, 460 A.2d 26 (1983). The state's final bill of particulars mentions only that a knife, not a straight razor, was used by the defendant in connection with the crimes charged. Thus, with respect to the weapons charge, the state was limited to proving that the defendant was carrying a knife.

The trial court was apprised by defense counsel during the trial of the variance between the amended information and the final bill of particulars with respect to the weapons charge. Instead of ordering a correction of the variance; see Practice Book § 833;[9] the court permitted the jury to review these charging documents with the discrepancy unremedied. This was error. See *State* v. *Avis,* 209 Conn. 290, 307–308, 551 A.2d 26 (1988). This determination, however, does not end our inquiry. "In order to constitute reversible error . . . the ruling must be both erroneous and harmful. *State* v. *Annunziato,* 169 Conn. 517, 524, 363 A.2d 1011 (1975). The burden of proving harmful error rests on the party asserting it; *State* v. *Dolphin,* 178 Conn. 564, 571, 424 A.2d 266 (1979); and the ultimate question is whether the erroneous action would likely affect the result. *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976)." *Manning* v. *Michael,* 188 Conn. 607, 611, 452 A.2d 1157 (1982).

The trial transcript discloses that, after the straight razor was admitted into evidence, the members of the jury were immediately given a cautionary instruction by the court that it was being offered not as the weapon used in any of the crimes charged, but solely to demonstrate the intent of the defendant to commit those crimes.[10] Further, in its final charge to the jury, the

[9] Practice Book § 833 provides: "When any bill of particulars is ordered, an amended or substitute information shall be filed incorporating its provisions."

[10] "[The Court:] I want the record to reflect the jury is back. A straight razor with the tag in your absence was marked as a full exhibit. If you will recall in my preliminary suggested instructions to you, it is possible in a trial for something to be admitted for a limited purpose and not for other purposes. I am instructing you that this razor has been admitted as a full exhibit. As you may recall, there are four counts. The bill of particulars indicates the State claims a confrontation by the defendant with the clerk with a knife. Now, the knife is already marked Exhibit A. This razor, Exhibit E, is offered not to show a use under any of the counts as the instrument used. This razor is used for the purposes of showing or intending to show

court reiterated the limited purpose for which the razor was admitted into evidence: "Some testimony and exhibits have been received for limited purposes. Where I have given a limiting instruction you must follow it. As I recall, the State offered the razor. The straight razor. *Not to prove carrying a dangerous weapon in the fourth count.* But on the issue of intent. And since it was received into evidence for that purpose, you should use the razor for the purpose for which it is offered[,] on the claim of [the] intent of the defendant." (Emphasis added.) Later, in its instructions with respect to the charge of carrying a dangerous weapon, the court again indicated that the weapon to be considered for purposes of that charge was the knife, not the straight razor.[11]

Any potential prejudice to the defendant that might otherwise have arisen due to the uncorrected variance between the charging documents on the weapons possession charge was, in our view, neutralized by the court's instructions to the jury. See *State* v. *Avis,* supra, 308. Accordingly, we conclude that the court's failure to order a timely correction of the variance between the amended information and the final bill of particulars was harmless error.

intent, which is an element in the crimes, in the crimes charged. So, this is just a preliminary caution. This is not to be used for all purposes. It is admitted to show on the issue of intent. I will again state that in the final charge for you."

[11] "[The Court:] As to the fourth count, the defendant is charged with carrying a dangerous weapon. A person who carries on his person any knife, the edged portion of the blade of which is four inches or over in length, unless such person has been granted a written permit authorizing the person to carry such weapon or instrument within the town, such person commits the crime of carrying a dangerous weapon. . . . There has been evidence adduced that there was no written permit issued and signed by the police or the chief of police authorizing Bernard Thomas . . . to carry a knife. And if you believe the elements someone who carries on his person a knife the edged portion of the blade which is four inches or over unless the person has a permit such person without a permit commits the crime of carrying a dangerous weapon."

## III

Finally, the defendant assigns error to the court's denial of his motion for a new trial. See Practice Book § 902.[12] A judgment of acquittal having been directed on the burglary charge, our review of the defendant's claim is confined to the remaining charges of which he was found guilty. "Appellate review of the denial of a motion . . . for a new trial is limited to a determination of whether the trial court abused its discretion. See *State* v. *Asherman,* 193 Conn. 695, 735, 478 A.2d 227 (1984)." *State* v. *Rothenberg,* 195 Conn. 253, 264, 487 A.2d 545 (1985). Our review of the record leads us to conclude that the trial court did not abuse its discretion in denying the defendant's motion for a new trial. There is no error.

There is error in part, the case is remanded with direction to set aside the judgment of conviction on the charge of burglary in the first degree and to render judgment of acquittal thereon.[13]

In this opinion the other justices concurred.

---

[12] Practice Book § 902 provides: "Upon motion of the defendant, the judicial authority may grant him a new trial if it is required in the interests of justice. Unless the defendant's noncompliance with these rules or with other requirements of law bars his asserting the error, the judicial authority shall grant the motion:

"(1) For an error by reason of which the defendant is constitutionally entitled to a new trial; or

"(2) For any other error which the defendant can establish was materially injurious to him.

"If the trial was by the court and without a jury, the judicial authority, with the defendant's consent and instead of granting a new trial, may vacate any judgment entered, receive additional evidence, and direct the entry of a new judgment."

[13] In view of the fact that the defendant's seven year sentence on the burglary charge was to run concurrently with his fifteen year sentence on the robbery charge; see footnote 1, supra; resentencing of the defendant is unnecessary.