STATE OF CONNECTICUT *v.* EUGENE RUSSELL
(7784)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued January 8—decision released July 24, 1990

*William M. Bloss,* special public defender, for the appellant (defendant).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *John O'Meara* and *Cecelia Wiederhold,* deputy assistant state's attorneys, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, following a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103, and larceny in the fourth degree in violation of General Statutes § 53a-125. He claims that the trial court

(1) should not have denied his motion for judgment of acquittal on the burglary count, (2) should not have instructed the jury that the section of the store where the theft occurred was a building, and (3) should not have submitted the case to the jury under both alternatives of the burglary statute. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. At about 5 a.m. on April 11, 1987, the night manager of the Pathmark grocery store in East Haven was making a routine check of the premises. The store is open twenty-four hours a day. A portion of the store known as the "service center," however, is closed daily from 9 p.m. to 9 a.m. The service center contained various items of "high value merchandise," such as cigarettes, electronic equipment, film, and small appliances, and it was secured at night from public access by a padlocked, eight foot tall folding metal gate.

As the night manager walked past the service center, he noticed that the cigarette display was in disarray and that several cartons of cigarettes[1] appeared to be missing. The night manager, accompanied by the store detective, unlocked the gate and went inside to investigate. They noted that many cartons of cigarettes were missing, and they discovered a brown wallet, containing the defendant's driver's license, on the floor of the service center. In an aisle adjacent to the service center, they discovered a child's car seat that had been removed from its box and placed on the floor. They reviewed a videotape recording made by the store's surveillance camera, which revealed that at approximately 2:20 a.m. a male subject removed the car seat from its box and then climbed over the gate, with the box, into the service center. The subject climbed back over the

---

[1] A subsequent inventory determined that eighty-two cartons, worth approximately $11.50 each, had been stolen.

gate several minutes later, still carrying the box, and moved quickly toward the store exit. Although the quality of the tape was said to be good, the tape did not reveal the facial features of the subject because of the camera's distance from the service center.

The theft was reported to the East Haven police, who went to the address listed on the driver's license found in the service center. In a trash can near the rear of the house they discovered an empty box for a child's car seat. They then obtained search warrants for both the house and a car parked next to the house. Upon executing the warrants, the police found numerous cartons of cigarettes in the house and in the car, all of which bore the Pathmark store's tax number. The defendant was subsequently arrested pursuant to a warrant.

I

The defendant first claims that the trial court should have granted his motion for judgment of acquittal on the burglary count. In making the motion, the defendant argued that because the Pathmark store was open to the public at the time of the relevant events, the state had failed to present sufficient evidence that the defendant entered and remained unlawfully in a building. The defendant's argument is bottomed on the premise that the entire Pathmark store, rather than just the closed service center therein, is the space relevant to the burglary count. We disagree.

Burglary in the third degree is defined in General Statutes § 53a-103 (a) as "a person['s] . . . enter[ing] or remain[ing] unlawfully in a building with the intent to commit a crime therein." General Statutes § 53a-100 (a) (1) provides that "building" carries its own meaning, but "[w]here a building consists of separate units, such as, but not limited to separate apartments, offices or rented rooms, any unit not occupied

by the actor is, in addition to being part of such building, a separate building." Id. The basic issue, then, is whether the statutes permit the "service center" area of the Pathmark store to be deemed a separate building. We conclude that they do.

Our Supreme Court in *State* v. *Thomas*, 210 Conn. 199, 554 A.2d 1048 (1989), recently addressed this general issue without reaching the exact question we face in the present case. In *Thomas*, the court held that the area behind a cash register counter in a convenience store could not be deemed a "building" within the meaning of § 53a-100 (a) (1). The court, however, did not elaborate on the reasoning behind its holding, and *Thomas*, therefore, is of limited use as we face a much closer version of the same question.

In *State* v. *Cochran*, 191 Conn. 180, 463 A.2d 618 (1983), the court upheld the burglary conviction of a defendant who, while invited into a portion of the victim's home, broke into two locked bedrooms and stole a stereo system. The court's decision turned on the fact that the defendant's invitation never "expressly or impliedly extended to either of the bedrooms, which were locked." Id., 185. The bedrooms, the court concluded, were "distinct parts" of the building for the purposes of the burglary statute. Id. The court reached its conclusion because it found that the state satisfied the burden of "showing that any license or privilege to remain in one section of the structure did not extend to the separate unit wherein the burglary allegedly occurred." Id., 186 n.6.

We receive further guidance from the comments by the commission to revise the criminal statutes: "The basic definition of the crime of burglary, implicit in these sections, is: an unlawful entry into or remaining in a building with the intent to commit a crime therein." Commission to Revise the Criminal Statutes, Penal

Code Comments, Connecticut General Statutes (1969), p. 50. The original and basic rationale of the crime is the "protection against invasion of premises likely to terrorize occupants." Id; see also *State* v. *Belton,* 190 Conn. 496, 506, 461 A.2d 973 (1983). In light of our consideration of these authorities, when considering whether the closed portion of a commercial building otherwise open to the public is to be deemed a separate building, therefore, we make the following inquiry. Is the closed portion of the building sufficiently demarcated and secured so that (1) persons licensed or invited to be in the open part of the building could not fail to realize that their license or invitation does not extend to the closed area; see *State* v. *Cochran,* supra; and (2) any rightful occupants of the closed area would have a reasonable expectation of not being confronted by unauthorized intruders. See id., 185; see also *State* v. *Belton,* supra.

There was substantial evidence before the court to support the conclusion that the service center was a separate building. It was closed by a padlocked, eight foot tall gate that precluded the public's entry into the area by any normal means. It was thus abundantly clear that the public was not invited into the service center when it was closed in that manner, and any employee working in the center at that time could reasonably have believed that it was secured against intrusion by outsiders. The defendant's challenge to the sufficiency of the evidence on this issue, therefore, was and is unavailing.

## II

The defendant next claims that the trial court's instructions improperly required the jury to find that the service center was a separate building and that this instruction both denied him due process by relieving the state of the burden of proof on this issue, and

infringed his constitutional right to a jury trial. The defendant did not raise this claim at trial, and, after examining the challenged instruction in its proper context; see *State* v. *Cato,* 21 Conn. App. 403, 410, 574 A.2d 240 (1990); we conclude that this claim is not truly of constitutional magnitude. *State* v. *Spears,* 20 Conn. App. 410, 417, 567 A.2d 1245 (1989).

The challenged instruction was part of the court's instructions on the elements of the crime of burglary. After giving a general description of the elements of the crime, the court elaborated on the definition of a building and clearly charged the jury with deciding the question of whether "the premises in this case was a building, as that term has been defined." The court then discussed unlawful entering and remaining in a building, instructing the jury that "[a] person enters and remains unlawfully in a or upon a premises when the premises at the time of such entry or remaining is not open to the public and when the defendant is not otherwise licensed or privileged to do so." The court then gave the challenged instruction: "As you heard from the testimony, the area in question here within the Pathmark store was closed off, it was a closed off area where the cigarettes allegedly were locked, which would have been a closed off area to the public. Therefore, it would be an area which would be affected by this charge as to whether a person unlawfully goes into that area."

The challenged instruction focused the jury's unlawful entry inquiry onto the relevant space, namely, the closed service area. Because the defendant's initial entry and remaining in the greater part of the Pathmark store was lawful, regardless of his motive in making that entry; *State* v. *Thomas,* supra, 206–208; the relevant issue before the jury was the legality of the defendant's entry into the *service center.* We conclude that the only effect of the challenged instruction,

in its proper context, was to narrow the issues before the jury. To the extent that the challenged instruction affected the court's earlier instruction on buildings, it narrowed the jury's inquiry to whether it considered the service center to be a separate building. The defendant's claim is not of constitutional magnitude, and we will not review it further.

## III

The defendant's last claim is that the trial court should not have submitted the case to the jury under both alternatives of the burglary statute without giving the jury a unanimity instruction.

The trial court charged the jury on both the "entering" and the "remaining" theories of burglary. Within the factual context of other cases, the acts of "entering" and "remaining" were found to be conceptually distinct, thus necessitating a unanimity instruction;[2] see, e.g., *State* v. *Edwards,* 10 Conn. App. 503, 513, 524 A.2d 648, cert. denied, 204 Conn. 808, 528 A.2d 1155 (1987). "In considering whether alternative statutory elements are conceptually distinct for purposes of requiring a unanimity instruction, however, the analysis 'turns, not only on the language of the two statutory subsections or elements, but also on the evidence in the case and how the case is presented to the jury in the court's instructions.' *State* v. *Velez,* 17 Conn. App. 186, 199, 551 A.2d 421 (1988)." *State* v. *Delgado,* 19 Conn. App. 245, 248, 562 A.2d 539 (1989).

---

[2] " ' "Where a trial court charges a jury that the commission of any one of several alternative acts would subject a defendant to criminal liability, a unanimity charge on a specific act is required only if two conditions are met: (1) the alternative acts are *conceptually distinct* from each other; *and* (2) the state has presented *supporting evidence* on each alternative act." ' (Emphasis in original.) *State* v. *Bailey,* [209 Conn. 322, 334, 551 A.2d 1206 (1988)] quoting *State* v. *Flynn,* 14 Conn. App. 10, 38, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988)." *State* v. *Delgado,* 19 Conn. App. 245, 247–48, 562 A.2d 539 (1989).

In this case, the defendant's acts of entering and remaining were conceptually indistinct and inseparable. The state's evidence was that the defendant entered the service center unlawfully and continued to remain there unlawfully. The videotape of the incident shows the subject entering the service center and exiting several minutes later. The defendant's theory of defense was that, because the service center was not a separate building, the defendant's license both to enter and to remain in the Pathmark store extended to the service center, and both his entry and remaining therein were lawful for the purposes of the burglary statutes. Thus, "the jury's verdict could have resulted only from its determination that the defendant's conduct constituted one continuous course of unlawful conduct"; id., 248–49; namely, that he entered the service center unlawfully and remained there without any change in his legal status. "Under these circumstances, the unlawfulness of his entry determined the unlawfulness of his remaining. The two inexorably intertwined acts were conceptually indistinct." Id., 249

Moreover, the defendant's conduct did not " 'comprise "separate incidents" implicating alternative or conceptually distinct bases of liability'; *State* v. *Bailey*, [209 Conn. 322, 336, 551 A.2d 1206 (1988)]; and this was not a case where the complexity of the evidence or other factors created a genuine risk of jury confusion. Id., 337." *State* v. *Delgado,* supra. The defendant's claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.