STATE OF CONNECTICUT *v.* EUGENE RUSSELL
(14089)

SHEA, CALLAHAN, GLASS, HULL and BORDEN, Js.

Argued February 15—decision released April 9, 1991

*William M. Bloss,* special public defender, for the appellant (defendant).

*Paul Ferencek,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Cecelia Wiederhold,* assistant state's attorney, for the appellee (state).

HULL, J. The defendant, Eugene Russell, was charged by substitute information with burglary in the

third degree; General Statutes § 53a-103; larceny in the fourth degree; General Statutes § 53a-125; and being a persistent larceny offender. General Statutes § 53a-40.[1] During his trial by a jury, the defendant filed two motions for a judgment of acquittal, both of which were denied. The jury found the defendant guilty of burglary in the third degree and larceny in the fourth degree, and the defendant thereafter pleaded guilty to being a persistent larceny offender. The trial court imposed an effective sentence of ten years imprisonment execution suspended after seven years to be followed by three years of probation.[2] The defendant appealed to the Appellate Court, which affirmed the judgment of the trial court. *State* v. *Russell*, 22 Conn. App. 440, 577 A.2d 1107 (1990). We subsequently granted the defendant's petition for certification to

[1] General Statutes § 53a-103 provides in pertinent part: "(a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

General Statutes § 53a-125 provides in pertinent part: "(a) A person is guilty of larceny in the fourth degree when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds five hundred dollars."

General Statutes § 53a-119 provides in pertinent part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."

General Statutes § 53a-40 provides in pertinent part: "(c) A persistent larceny offender is a person who (1) stands convicted of larceny in the third degree in violation of the provisions of section 53a-124 in effect prior to October 1, 1982, or larceny in the fourth, fifth or sixth degree and (2) has been, at separate times prior to the commission of the present larceny, twice convicted of the crime of larceny."

[2] The trial court imposed two consecutive sentences of five years imprisonment, execution suspended after three and one-half years. Although ordinarily the maximum sentence authorized for a conviction of larceny in the fourth degree is one year imprisonment; see General Statutes §§ 53a-125, 53a-36; in this case, because the defendant was found to be a persistent larceny offender, the trial court was authorized to impose a sentence of one to five years imprisonment on that count. See General Statutes §§ 53a-40 (h), 53a-35a (b).

appeal to this court limited to the following issue: "Did the Appellate Court properly determine that a fenced-off section of a building otherwise open to the public constitutes a 'building' for purposes of Connecticut General Statutes § 53a-103?" *State* v. *Russell,* 216 Conn. 814, 580 A.2d 65 (1990). We reverse the judgment in part.

The jury could reasonably have found the following facts. On April 11, 1987, at approximately 5 a.m., the night manager of the Pathmark grocery store in East Haven noticed that several cartons of cigarettes appeared to be missing from a cigarette display located in the store's "service area." The service area is the portion of the store that, despite the fact that the store provides service 24 hours a day, is closed between the hours of 9 p.m. and 9 a.m., due to the presence of high value merchandise. During these hours, the service area is enclosed by a padlocked, metal folding gate that is eight feet in height.

Following his discovery, the manager, accompanied by the store detective, unlocked the gate and entered the service area. Investigation revealed that numerous cartons of cigarettes were missing. In addition, a brown wallet, containing the defendant's driver's license, was retrieved from the floor.

Outside the service area, the manager and the detective discovered that a child's car seat had been removed from its box and placed on the floor and that the box was missing. A review of a videotape recording made by the store's surveillance camera revealed that earlier that morning, at approximately 2:20 a.m., a man had removed the car seat from its box and, with the box in hand, had climbed over the gate and into the service area. Within a few minutes, the man had climbed back over the gate and, while still in possession of the box, had exited the store.

Following a report of the theft, the East Haven police went to the house located at the address that appeared on the license found in the service area. In a trash can at the rear of the house, the police uncovered an empty box for a child's car seat. The police thereafter obtained search warrants for the house and for a car parked near the house. Upon executing the warrants, the police discovered numerous cartons of cigarettes in both the house and the car, each of which bore the Pathmark store's tax number.

The defendant claims that because the enclosed service area of the Pathmark grocery store is not a "building" within the meaning of § 53a-103, the trial court should have granted his motion for a judgment of acquittal with respect to the burglary charge. The state counters that because it was secured sufficiently to restrict public access, the service area is a "building" as that term is defined in General Statutes § 53a-100 (a) (1) and that, therefore, the judgment of conviction must be affirmed. We agree with the defendant.

"A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein." General Statutes § 53a-103. For purposes of this case,[3] "building" is defined as follows: "Where a building consists of separate units, such as, but not limited to separate apartments, offices or rented rooms, any unit not occupied by the actor is, in addition to being a part of such building, a separate building . . . ." General Statutes § 53a-100 (a) (1). We must determine, therefore, whether the enclosed service area is a "separate unit" within the meaning of § 53a-100 (a) (1). In so doing, we are mindful that "[c]riminal statutes are not to be read

[3] It is undisputed that the state alleged that the defendant, with the intent to commit a crime therein, unlawfully entered the enclosed service area which it claims is a "separate unit" of the Pathmark store.

more broadly than their language plainly requires . . . ." *State* v. *McGann,* 199 Conn. 163, 177, 506 A.2d 109 (1986); see also *State* v. *White,* 204 Conn. 410, 424, 528 A.2d 811 (1987); *State* v. *Dolphin,* 203 Conn. 506, 523, 525 A.2d 509 (1987). Moreover, "[a] penal statute must be construed strictly against the state and liberally in favor of the accused. *State* v. *Paradise,* 189 Conn. 346, 352, 456 A.2d 305 (1983)." *State* v. *Torres,* 206 Conn. 346, 355, 538 A.2d 185 (1988); see also *State* v. *Bunkley,* 202 Conn. 629, 641, 522 A.2d 795 (1987).

We faced a similar question in *State* v. *Thomas,* 210 Conn. 199, 554 A.2d 1048 (1989), where the defendant was alleged to have committed a burglary by unlawfully entering the counter area of a convenience store, which was open to the public, with the intent to commit a crime therein. We concluded "that under no stretch of the statutory language can the counter area of [a] . . . convenience store be deemed a 'building' as that term is defined in § 53a-100 (a) (1)." Id., 205–206. The state asserts that our conclusion in *State* v. *Thomas,* supra, that the counter area was not a "building," was due primarily to the fact that, in contrast to the present case, the area in question was not secured in order to prohibit public access. We disagree.

According to the rule of ejusdem generis, unless a contrary intent appears, where general terms are followed by specific terms in a statute, the general terms will be construed to embrace things of the same general kind or character as those specifically enumerated. 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 47.17; see also *Eastern Connecticut Cable Television, Inc.* v. *Montville,* 180 Conn. 409, 413, 429 A.2d 905 (1980); *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 296, 82 A. 561 (1912). In § 53a-100 (a) (1), the general term, "separate units," is followed by three examples: "separate apartments,

offices or rented rooms." In *State* v. *Thomas,* supra, 205, we concluded that "[t]he store counter, and the area it encompasses, clearly does not fall within the 'separate unit' category of offices, rooms or like structures that may themselves be considered 'separate building[s]' under § 53a-100 (a) (1) . . . ." Our conclusion was compelled, therefore, by the lack of accord between a counter area and the concept of a "legally identifiable 'separate unit' " inherent in § 53a-100 (a) (1). Id., 206.

By virtue of the independent living or working relations that occur therein and despite the fact that they are located in a single building, within its ordinary meaning, "separate apartments, offices [and] rented rooms" are treated as "legally identifiable 'separate unit[s]' " for purposes of our burglary statutes. In the present case, although the service area was sufficiently secured at the time of the defendant's entry, the temporary enclosure did not render the service area a separate working unit akin to the examples set forth in § 53a-100 (a) (1). Unlike an office building, where numerous independent working enterprises coexist, the Pathmark grocery store houses a single working unit. The temporarily enclosed service area, analogous to a locked closet or a locked storage room, has no business purpose or occupancy distinct from that of the Pathmark store as a whole. See *People* v. *O'Keefe,* 80 App. Div. 2d 923, 437 N.Y.S.2d 385 (1981) (locked metal closet not "building" for purposes of burglary statute); *People* v. *Williams,* 125 Misc. 2d 9, 13, 478 N.Y.S.2d 554 (1984) (because locked maintenance room in three family house not "independent unit" having distinct business from other units, not a "separate unit" and, therefore, not a "building" under burglary statute).

We are equally unpersuaded by the precedent that the state offers in support of its position. See *Dixon* v. *State,* 165 Ga. App. 133, 299 S.E.2d 608 (1983); *State*

v. *Sanchez,* 105 N.M. 619, 735 P.2d 536, cert. denied, 105 N.M. 618, 735 P.2d 535 (1987); *Evans* v. *State,* 677 S.W.2d 814 (Tex. App. 1984). Although those cases upheld burglary convictions based upon entry into secured, but arguably interdependent areas of a building otherwise open to the public, the jurisdictions in which the convictions were procured prohibited, in addition to unlawful entry into a "building," unlawful entry into "portions" and "parts" of a building. See *Dixon* v. *State,* supra, 135 ("[b]urglary is committed when one, without authority, enters any building *or room or part thereof*") (emphasis added); *State* v. *Sanchez,* supra, 621 (" '[a] person is guilty of burglary if he enters a building or occupied structure, or *separately secured or occupied portion thereof* ' ") (emphasis added); *Evans* v. *State,* supra, 817 (" '[a] person commits an offense if without the effective consent of the owner, he: [1] enters a habitation, or a building [*or any portion of a building*] not then open to the public' "). (Emphasis added.) Each of these cases, therefore, is inapposite.

As in *State* v. *Thomas,* supra, 205, under no stretch of the statutory language can a temporarily enclosed portion of a grocery store be deemed a "building" as that term is defined in § 53a-100 (a) (1). Consequently, because it is undisputed that the Pathmark grocery store, the only building involved, was open to the public at the time the defendant is alleged to have committed a larceny therein, the state failed to prove beyond a reasonable doubt one of the essential elements of burglary in the third degree, i.e., unlawful entry or remaining by the defendant in a building. We conclude, therefore, that the trial court should have granted the defendant's motion for a judgment of acquittal on the burglary charge.

The judgment is reversed in part and the case is remanded to the Appellate Court with direction to

remand it to the trial court with direction to vacate the judgment of conviction of burglary in the third degree and to grant the defendant's motion for a judgment of acquittal on that count of the substitute information.

In this opinion the other justices concurred.