## STATE OF CONNECTICUT *v.* VICTOR STAGNITTA
## (AC 22460)

Lavery, C. J., and Flynn and McDonald, Js.

---

608

Argued October 22, 2002—officially released January 28, 2003

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (defendant).

*Robin S. Schwartz*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Thomas R. Garcia*, assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Victor Stagnitta, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1) and larceny in the third degree in violation of General Statutes § 53a-124 (a) (2).[1] On appeal, the defendant claims that the state presented insufficient evidence to sustain his conviction of burglary in the first degree because it failed to present evidence that he unlawfully entered or

---

[1] The defendant was acquitted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3).

remained in a building, as is required for a conviction of burglary in the first degree.[2] We disagree.

In considering the defendant's claim, we review the trial transcript to determine what relevant evidence was presented to the jury. The following evidence was presented at trial. The Pond House Cafe (Pond House) is a restaurant in West Hartford serving lunch to the public from 11 a.m. until 2:30 p.m. and dinner from 5 p.m. to 9 p.m. A separate banquet hall also is available for private parties. The kitchen and a management office are in the back of the restaurant. The defendant had been employed by the Pond House as a dishwasher for the four to six months prior to July 14, 2000. The week preceding July 14, the defendant had failed to report to work, and the Pond House management placed him on a leave of absence. The management did not convey to the defendant his leave of absence status, which required him to request his job back when he could give an explanation for his absence from work.

On the afternoon of July 14, 2000, Paul DeVeau, the assistant general manager at the Pond House, received a telephone call informing him that the defendant was coming to the Pond House to pick up his check and that he was in "rough shape." As a safety precaution, DeVeau met the defendant outside the restaurant and gave him his check, which DeVeau then cashed for the defendant. Thereafter, the defendant left.

Later that night, at approximately 11:45 p.m., the defendant returned to the Pond House, entering through the back door. The defendant proceeded to walk through the kitchen and into the inner management office where DeVeau was working on the daily receipts, including cash. That office is used by the restaurant's management to manage the business, to consult with

---

[2] At trial, the defendant sought a judgment of acquittal as to the burglary count, which the court denied. That is the defendant's sole ground of appeal.

employees and, among other things, to collect and calculate the daily cash receipts. The office was entered via a mop closet from the main hallway of the restaurant. The door to the office locked automatically when it was closed, and only the three Pond House managers had keys. The office was not visible from outside the restaurant building. Upon entering the office, the defendant, brandishing an eight to ten inch kitchen knife, demanded the money. DeVeau was shocked and scared. Taking the defendant's demand seriously, he handed the defendant an envelope containing $1171.01.

After DeVeau gave the defendant the envelope, he asked the defendant to leave. Instead of leaving, the defendant and DeVeau engaged in a ten to fifteen minute conversation. During the conversation, the defendant put the knife in his pants pocket. When DeVeau attempted to give the defendant a hug, however, the defendant brandished the weapon again. During the conversation, the defendant told DeVeau that he needed the money to purchase enough narcotics to kill himself. The defendant stated that he "kind of thought" that he did not have a job anymore, and DeVeau told him that was not true, that if he could prove that he could get help, he would have a job at the Pond House. While the defendant and DeVeau talked, an employee backed into the office door, which was still ajar. Although DeVeau did not fear that the defendant would hurt him, DeVeau did not want anybody else "getting hurt" and told the defendant: "Take the money and go. I do not want anybody getting hurt. Put the knife away and leave. Nobody will stop you." The defendant then turned to leave. In an attempt to prevent the defendant from hurting himself, DeVeau grabbed the defendant's wrists and told him he could not leave. The defendant resisted, and DeVeau called for assistance. Two employees working in the kitchen came to DeVeau's aid and held the defendant down until police arrived.

Following a jury trial, the defendant was found guilty of burglary in the first degree and larceny in the third degree, and was sentenced on those counts. This appeal followed.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . The scope of our factual inquiry on appeal is limited. This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . In this process of review, it does not diminish the probative force of the evidence that it consists . . . of evidence that is circumstantial rather than direct." (Emphasis in original; internal quotation marks omitted.) *State* v. *Estrada*, 71 Conn. App. 344, 350, 802 A.2d 873, cert. denied, 261 Conn. 934, 806 A.2d 1068 (2002).

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Watts*, 71 Conn. App. 27, 32, 800 A.2d 619 (2002).

Our Penal Code provides: "A person is guilty of burglary in the first degree when he enters or remains

unlawfully in a building with intent to commit a crime therein and (1) . . . is armed with . . . a deadly weapon or dangerous instrument . . . ." General Statutes § 53a-101 (a). "A person 'enters or remains unlawfully' in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the actor is not otherwise licensed or privileged to do so." General Statutes § 53a-100 (b).

"To enter unlawfully means to accomplish an entry by unlawful means, while to remain unlawfully means that the initial entering of the building . . . was lawful but the presence therein became unlawful because the right, privilege or license to remain was extinguished. When either of these situations is established, the threshold element of burglary is present." *State* v. *Edwards*, 10 Conn. App. 503, 511, 524 A.2d 648, cert. denied, 204 Conn. 808, 528 A.2d 1155 (1987).

The defendant's sufficiency of the evidence claim is based on the premise that he could not have been convicted of burglary in the first degree because (1) the Pond House was open to the public at the time he entered, (2) the office where the alleged burglary occurred was not a separate unit from the public areas of the Pond House and (3) as an employee of the Pond House, he was licensed or privileged to enter the Pond House and the office and, therefore, did not unlawfully enter or remain in the Pond House. We disagree.

We conclude that the defendant's claim that the Pond House was open to the public when he entered is without merit. It is the defendant's contention that because the Pond House had rented its banquet hall to a wedding party until midnight on July 14, 2000, the establishment was open to the public when he entered.

The evidence presented to the jury established that the Pond House was not open to the public at 11:45 p.m. on July 14, 2000. DeVeau testified that on July 14,

2000, the Pond House served lunch from 11 a.m. until 2:30 p.m. and dinner from 5 p.m. until 9 p.m. After 9 p.m., patrons no longer were seated and once those who already had been seated finished their dinner, the cafe would be closed, as it was at 11:45 p.m. that evening. Accordingly, after 9 p.m., the Pond House no longer was open to the public for new patrons. Although the Pond House's banquet hall was rented to a private party that evening until midnight, there is no support for the defendant's claim that the Pond House was open to the public. DeVeau's uncontroverted testimony revealed that the reception was not open to the public. Rather, it was a private party for the 100 invited wedding guests only. Accordingly, there was sufficient evidence before the jury to establish that when the defendant entered the Pond House's kitchen at 11:45 p.m., he entered the restaurant at a time when it was not open to the public.

Furthermore, there was sufficient evidence before the jury to establish under our burglary statutes that the management office was a separate unit from those areas of the Pond House that were open to the public. "For purposes of first degree burglary under § 53a-101 (a), the term building is defined separately in § 53a-100 (a) (1) as follows: Where a building consists of separate units, such as, but not limited to separate apartments, offices or rented rooms, any unit not occupied by the actor is, in addition to being a part of such building, a separate building . . . ." (Internal quotation marks omitted.) *State* v. *Thomas*, 210 Conn. 199, 205, 554 A.2d 1048 (1989).

In *State* v. *Hafford*, 252 Conn. 274, 311–13, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000), our Supreme Court determined that the trial court in that case reasonably could have concluded that a rear utility room at a gasoline station's convenience store was a separate unit and, therefore,

a "building" under § 53a-100 (a) (1). The court based its decision on the fact that the utility room was a separately unit distinct from the convenience store, it was not visible from the outside, it could be reached only by crossing the station's three bay garage area, it had a business purpose that was different from that of the convenience store, and painted on the door of the rear utility room were the words "Private, Employees Only." Id., 312–13.

In the present case, the jury heard testimony that to enter the office, one first would have to go through the mop closet, which was off the main hallway and had a door. The office also could be accessed from the kitchen through an open area to the mop closet. The office itself also had a door that, when closed, automatically locked. Only the three managers at the Pond House had keys to the office. The office is not visible from outside of the Pond House. The Pond House, as a restaurant, was in the business of preparing and serving food, while the office that the defendant entered was used as a secure area for management, among other things, to count the daily proceeds and to interact with employees.

The defendant relies on the testimony of Louis Lista, the owner of the Pond House, who testified that "people were always going in and out" of the office. Lista's statement, however, referred to employees entering the office, not the general public. Nowhere in the testimony elicited is there a suggestion that the public was permitted to enter the office. We conclude that there was evidence that the office was a separate unit and was not open to the public.

The defendant argues that because he was an employee at the Pond House, he was licensed and privileged to enter the establishment and the inner office as he did. DeVeau testified that when it came to employees

using the back entrance that the defendant used to enter the Pond House, the Pond House had an "open door policy," which was not limited to the times when an employee was scheduled to work. Additionally, Lista testified that employees would enter the office "[f]or any number of reasons . . . asking questions, finding out information, general gossip . . . people were always going in and out."

The defendant claims that he was employed by the Pond House on July 14, 2000. There was evidence that the defendant was on a leave of absence because he had failed to report for work for one week and that the defendant "kind of thought" that he no longer had a job there. For purposes of this appeal, we will assume, however, that the defendant was an employee of the Pond House.

"A *license* in real property is defined as a personal, revocable, and unassignable *privilege*, conferred either by writing or parol, to do one or more acts on land without possessing any interest therein. . . . Generally, a license to enter premises is revocable at any time by the licensor. . . . It is exercisable only *within the scope of the consent given*. . . . The phrase, 'licensed or privileged,' as used in General Statutes § 53a-100 (b) is meant as a unitary phrase, rather than as a reference to two separate concepts." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Allen*, 216 Conn. 367, 380, 579 A.2d 1066 (1990).

Although the testimony at trial established that employees generally were licensed or privileged to enter the Pond House through the back entrance and to go into the office, that privilege did not extend to entering the office displaying an eight to ten inch knife and demanding money. See *State* v. *Reyes*, 19 Conn. App. 179, 191–92, 562 A.2d 27 (1989), cert. denied, 213 Conn. 812, 568 A.2d 796 (1990). Accordingly, there was

sufficient evidence before the jury to find that even if the defendant had a license or privilege to enter the Pond House and the inner office, that did not authorize him to enter the office as he did on July 14, 2000.

In support of his argument, the defendant relies on *State* v. *Thomas*, supra, 210 Conn. 199. The defendant cites our Supreme Court's language in *Thomas* requiring the element of terror that is implicit in our burglary statutes. Quoting the commission to revise the criminal statutes, our Supreme Court stated: "The purpose of this definition is to make clear that only the kind of entry or remaining which is likely to terrorize occupants is prohibited by the crime of burglary." (Internal quotation marks omitted.) Id., 207. The defendant's reliance on that language is misplaced. The language that the defendant quotes is immediately followed by: "Thus, when the building is, at the time, *open to the public,* or the actor is otherwise licensed or privileged to be there, the element of terror is missing and the requirement is not met." (Emphasis added; internal quotation marks omitted.) Id. We conclude that the decision in *Thomas* is inapposite because it is based on a factual scenario different from the facts before us.

The defendant's claim that the terror element was lacking is unavailing in light of DeVeau's testimony. DeVeau testified that he was shocked and scared when he saw the defendant enter the office with a knife and demand money. DeVeau took the defendant's actions seriously. Those actions created an "inherently threatening situation." *State* v. *Reyes*, supra, 19 Conn. App. 192. The defendant argues that DeVeau could not have been afraid because after DeVeau handed the defendant the envelope containing a portion of the day's proceeds, the two engaged in a ten to fifteen minute conversation. After handing the envelope to the defendant, however, DeVeau twice asked the defendant to leave, the second time out of fear that the defendant would harm some-

one. Accordingly, we conclude that any right that the defendant may have had to enter and to remain in the office was extinguished under the circumstances. See *State* v. *Clark*, 48 Conn. App. 812, 825, 713 A.2d 834, cert. denied, 245 Conn. 921, 717 A.2d 238 (1998); *State* v. *Gelormino*, 24 Conn. App. 563, 571–72, 590 A.2d 480, cert. denied, 219 Conn. 911, 593 A.2d 136 (1991); *State* v. *Reyes*, supra, 19 Conn. App. 192–93.

The judgment is affirmed.

In this opinion the other judges concurred.